[Sac. No. 522.    Department One.—June 6, 1899.]

# THE PEOPLE ex rel. REUBEN PIXLEY, Appellant, v. LODI HIGH SCHOOL DISTRICT, et cetera, Respondent.

HIGH SCHOOL DISTRICTS—CONSTITUTIONAL LAW—DELEGATION OF POWER OF TAXATION — ADVISORY ESTIMATE OF SUPERINTENDENT.— Section 1670 of the Political Code, as amended in 1895, providing for the organization of high schools in cities, towns, and school districts having a population of one thousand inhabitants or more, is not unconstitutional as delegating legislative power of taxation to the county superintendent. His estimate made to the board of supervisors is only advisory, and that board is authorized in its discretion to determine the amount of taxation and to levy a tax sufficient to maintain the high school for the current year, or to erect the necessary buildings, as the case may be.

ID.—POWER OF LEGISLATURE—SPECIAL TAX—SUBMISSION TO VOTE.—The legislature may by general law authorize a tax for a special purpose, without submitting the proposition to a vote of the people; and when the people have voted to organize a high school district under a law which gives the supervisors power to levy a special tax to support the school, it is not necessary that the tax should be submitted to a vote of the people.

ID.—SPECIAL LEGISLATION — GENERAL LAW — CLASSIFICATION.— Section 1671 of the Political Code, as amended in 1895, is not special legislation, but is general in its operation and purpose, and is based upon a reasonable classification of high schools, and gives to all inhabitants of the state similarly situated equal opportunity to avail themselves of the benefits of such schools.

ID.—SPECIAL POWER OF TAXATION—AUTHORITY OF LEGISLATURE—The law is not special merely because it vests in the board of supervisors power to levy a tax for high schools which the general laws of the state do not give to the board, nor because it gives to the high school board initiatory powers with respect to taxation not possessed in other school districts. The legislature may constitute high schools, and provide for their support by methods different from those adopted for like purposes as to other schools.

ID.— PROCEEDINGS FOR ORGANIZATION — SUFFICIENCY OF PETITION.— A petition for the organization of a high school district, directed to the trustees of the school district, naming them, though not directed to the board of trustees, stating the population of the school district to be more than one thousand, and showing that the boundaries of the proposed high school district are the same as those of the school district, and to which is appended a certificate signed by the school census marshal, certifying that the petition contains the names of a majority of the heads of fami-

lies in the school district, "as shown by the last school census report," though that fact is not stated in the body of the petition, is a sufficient compliance with the law.

Id.—Proof of Signature by Majority of Heads of Families—Census Sheets—Presumption upon Appeal.—The original census sheets used by the census marshal, showing the last census made by him before the signing of the petition, furnish evidence from which the fact could be determined whether a majority of all the heads of families signed the petition, and where such sheets are not in the record upon appeal it will be presumed in support of the judgment that the evidence was sufficient.

Id.—Petition of Trustees to Call Election—Authentication.—The petition of the trustees of the school district to the county superintendent of schools to call an election need not be verified nor authenticated by the clerk, and, no form thereof having been prescribed by law, such a petition, beginning: "We, the undersigned trustees," et cetera, and subscribed by them as trustees of the school district, and indorsed as a petition by them as such trustees, sufficiently indicates its purpose, and is *prima facie* authority to the county school superintendent.

Id.—Nomination of Election Board—Filling Vacancy—Validity of Election.—The county superintendent is required to call the election, and to appoint three qualified electors to conduct the election; but where one of the electors so appointed was sick and could not attend, and the vacancy was filled by the appointment of another qualified elector in his stead by the remaining two appointees, such appointment, if irregular, did not affect the validity of the election, provided the result of the election was not thereby changed.

Id.—Hours of Opening Polls—Sufficiency of Notice.—Under section 1597 of the Political Code, providing that in such districts "the polls must not be opened before 9 o'clock A. M., nor kept open less than four hours," a notice of election requiring the polls to be kept open from 2 o'clock P. M. until sunset of May 23d, is a sufficient compliance with the law.

Id.—Posting of Notice—Sufficiency of Proof.—Proof made that the notice of election was posted fifteen days before the election is sufficient to show a posting for fifteen days, as required by the law; and it is not necessary to prove that the notice remained posted each day after it was posted.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. Joseph H. Budd, Judge. ·

The facts are stated in the opinion.

W. F. Fitzgerald, Attorney General, and Minor & Ashley, for Appellant.

W. C. Green, and Nicol & Orr, for Respondent.

CHIPMAN, C.—Action to exclude defendant from exercising any power as a high school district.  Defendant had judgment, from which and from an order denying motion for a new trial plaintiff appeals.

Appellant contends: 1. That section 1670 of the Political Code, as amended in 1895, which provides for the organization of high schools in cities, incorporated towns, and school districts having a population of one thousand inhabitants or more, violates section 1, article XIV, amendments of the national constitution, in that it deprives the taxpayer of his property without due process of law; it also violates section 12, article XI, of the constitution of this state, because it confers legislative powers upon the high school district; and also violates section 25, article IV, of that constitution, because it is a special law; and 2. It is contended that the proceedings taken in organizing defendant corporation did not comply with the requirements of law.

1. The feature of the Political Code, found in subdivisions 14 and 15 of section 1670, which relate to the levy of a special tax for the support of these schools, is especially assailed.  Subdivision 14 of this section, as it was amended in 1895, requires the high school board to furnish to the authorities whose duty it is to levy taxes—in this case the board of supervisors (*Chico etc. Board v. Supervisors,* 118 Cal. 115)—the first day of September, an estimate of the cost of purchasing a suitable lot, of procuring plans . . . . and erecting a building . . . . and of conducting the school for the school year"; and "each year thereafter to present to said authorities . . . . an estimate of the amount of money required for conducting the school for the school year."  Subdivision 15 provides that: "When such estimate shall have been made and submitted, it shall be the duty of the authorities whose duty it is to levy taxes in said . . . . school district . . . . to levy a special tax upon all the taxable property of said  . . . . school district, sufficient in amount to maintain the high school.  Said tax shall be computed, entered upon the tax-roll, and collected, in the same manner as other taxes are computed, entered and collected."  The same question was here under the act of 1891 (Stats. 1891, p. 182).  As the law then read, it was held unconstitutional because it left

the amount of the tax wholly to the discretion of an executive officer, leaving no discretion in the board of supervisors, thus delegating legislative power to the county superintendent. (*McCabe v. Carpenter*, 102 Cal. 469.)   After that decision, and probably to obviate the infirmity in the law of 1891, the provisions of the code were amended as shown above.   Appellant insists that the law as amended is still obnoxious to the same objections as pointed out in *McCabe v. Carpenter, supra.*   We cannot so regard the statute.   In the former act it was provided that "an annual tax shall be levied. . . . the amount of said tax being estimated by the county superintendent of schools," and it was made the duty of the board of supervisors "to levy such rate as will produce the amount estimated to be necessary for such purposes."   Under the statute of 1895 the estimate of the superintendent of schools is but advisory, and the discretion is left with the supervisors to determine the amount and levy the tax "sufficient . . . . to maintain the high school," not necessarily "such rate as will produce the amount estimated" by the superintendent, as formerly; and "said tax shall be computed, entered upon the tax-roll, and collected, in the same manner as other taxes are computed," et cetera.   So far as we can see, the taxpayer has the same right under this law to be heard and has the same notice as he has under the law which provides for fixing the tax levy by the supervisors to meet the estimate furnished by the school superintendent for the county school fund.   (Pol. Code, secs. 1817-19.)   It is said that this is a special tax, and that because a special tax cannot be levied in any of the common school districts without an election, as provided for in sections 1830-39 (except as specified in sections 1817-20), the law is unconstitutional.   We know of no limitation upon the powers of the legislature to authorize by general law a tax for a special purpose without first submitting the proposition to a vote of the electors.   Having voted that they will organize a high school under a law which gives to the supervisors the power to levy a special tax to support the school, there would seem to be no occasion for submitting the question to a vote of the people a second time, except it might be to determine the rate.   But that is a function within the powers of the supervisors, which we think the legislature could confer

and has conferred upon them.  There is reason for submitting the question for special tax to the voters in the common school districts which does not exist in the high school districts.  The common school is supported by the general school fund and school tax, no part of which can be used for other schools.  The objection that the law fixed no maximum rate, and provides no rule or method of computation of amounts to be raised, is without merit.  The law says that the supervisors shall compute the tax in the manner as other taxes are computed, and the rate is governed necessarily by the amount found by the board to be sufficient for conducting the school for the school year, or for constructing the necessary buildings, as the case may be.  We cannot assume that this discretion will be abused in order to take away the power by which that discretion is exercised.  We must rather assume that the supervisors will exercise such wise discretion as alone guides and limits them in fixing the rate of taxation to meet other county expenditures—for example, building bridges—as to which their powers are unlimited.

Section 25 of article IV of the constitution contains thirty-three subdivisions specifying certain matters relating to which "the legislature  shall not pass  local or  special laws."  Appellant designates the following subdivisions as violated by section 1670: "10. For the assessment or collection of taxes; 11. Providing for conducting elections . . . . except on the organization of new counties; . . . . 19. Granting to any corporation . . . . any special privilege, et cetera; . . . . 27. Providing for the management of common schools; 28. Creating offices, or prescribing the powers and duties of officers, in counties . . . . election or school districts; . . . . 33. In all other cases where a general law can be made applicable."

Section 6 of article IX of the constitution provides that "our public school system shall include primary and grammar schools, and such high schools, evening schools, normal schools, and technical schools as may be established by the legislature, or by municipal or district authority; but the entire revenue derived from the state school fund, and the school tax, shall be applied exclusively to the support of primary and grammar schools."

Section 5 of the same article makes it the duty of the legis-

lature to provide a system of common schools by which a free
school shall be kept up and supported in each district at least
six months in every year; and section 1 declares that "a gen-
eral diffusion of knowledge and intelligence" is "essential to the
preservation of the rights and liberties of the people," and there-
fore "the legislature shall encourage by all suitable means the
promotion of intellectual . . . . improvement." The common
or free school is made the special and exclusive beneficiary of
the state school fund and the school tax, but all the enumerated
educational instrumentalities belong to our public school sys-
tem, and may be authorized and their support provided for by
the legislature.

Under the constitutionl admonition, the legislature has pro-
vided a system of public schools, consisting of the primary,
grammar, and high school, the latter of which is designed to be
preparatory to admission in the state university. Graduates of
the grammar school are admitted into the high school without
examination. It cannot be doubted that it is within the power
of the legislature to provide a plan for the organization and
establishment of high schools, and we do not understand that
the people of the state in this action are attempting to discredit
a power expressly given the legislature by them in our organic
law. The objection is to the plan itself, and not to the power
to prescribe a plan. The plan is by no means complex or anom-
alous.

By section 1670, as amended by the act of 1895, "any . . . .
school district having a population of one thousand inhabitants
or more may, by a majority vote of the qualified electors voting
at the election held for the purpose . . . . establish and main-
tain a high school at the expense of such . . . . school dis-
trict." It is made the duty of the board of school trustees,
whenever a majority of the heads of families in any school dis-
trict, as shown by said census, shall unite in a petition to that
board "for the establishing and maintaining of a high school
therein," to petition the county superintendent of schools "for
a determination of the question"; and it is made the duty of
the county superintendent thereupon to call an election for that
purpose, to "be conducted in the manner prescribed for con-
ducting school elections"; the election officer must report the

result to the county superintendent within ten days from the holding the election, and, if a majority have voted in favor of the school, it is made the duty of the county superintendent, within fifteen days after receiving the returns, to call a meeting of the board of school trustees of the district, who shall at said meeting determine the location and name of the high school; the board of school trustees constitute the high school board, and "shall have the management and control of said high school"; their powers and duties shall be such as are now or may hereafter be assigned by law to boards of school trustees. Other provisions prescribe the course of study and for admission of pupils. The high school is thus constituted. Then follow the provisions in subdivisions 14 and 15 already considered relating to revenue to support the school. It is claimed that the section is specially legislation because it takes from the operation of the general law for the levy of taxes a certain class of school districts, and it applies to these districts alone and vests in the board of supervisors a power to levy a tax which the general laws of the state do not give that board; and gives to the high school board initatory powers with respect to taxation not possessed in any other district. All this may be true without making the law special legislation in the sense the term "special" is used in the constitution. It is within the power of the legislature to constitute these schools and to provide for their support by methods different from those adopted for like purposes as to other schools. In a sense the provisions had to be special, for no part of the state school fund or general school tax could be used to support the high school. The law is general in its operation, for it applies alike to all cities, incorporated towns, and school districts having a population of one thousand inhabitants or more; and it is general in its purpose, for it gives to all inhabitants of the state similarly situated equal opportunity to avail themselves of the benefits to be derived from these schools. The nature and objects of these schools suggest a classification different from the common school corporation and rationally justify the diversity in the legislation as to them. (*People v. Central Pac. R. R. Co.*, 105 Cal. 576.) While it is true, as suggested by appellant, that the taxpayer is compelled to pay a special tax to support the high school without being heard upon the

amount of his tax in the manner he may be heard before being compelled to pay a special tax to support the common school— i. e., by voting at an election called for the purpose—the act is not for that reason special legislation.   We do not feel called upon to discuss the several specific objections above noted.   We think the high school act here involved meets the definition of a general law as pointed out in the case last cited.

2. The objection that the proceedings did not comply with the requirements of the law is not well taken.   The petition is directed to the "trustees of Salem school district of the county of San Joaquin," naming them.   This was sufficient without directing the petition to the board of trustees; it states the population of the district to be more than one thousand; it gives the boundaries of the proposed district and shows that they include the whole of Salem school district.   The body of the petition does not state that the signers constitute "a majority of the heads of families" of the district, but appended to it, and forming a part of it as submitted to the trustees, is a certificate signed by the school census marshal for Salem school district, in which he certifies that the petition "contains the names of a majority of the heads of families in the above named school district as shown by the last school census report."   Section 1670, *supra,* provides that, "whenever a majority of the heads of families . . . . shall unite in a petition to the  . . . . board of school trustees," et cetera.   We think the petition was sufficient.   (*Frederick v. San Luis Obispo,* 118 Cal. 391.)   It is objected that the petition of the trustees to the county superintendent of public schools to call an election was insufficient because it is unverified and is not authenticated by the clerk; also because it begins, "We, the undersigned school trustees," and contains, "Now, therefore, we, the undersigned trustees; and your petitioners will ever pray," and bears these names over the word "trustees," and is indorsed "petition by trustees," et cetera.   The point is that the act requires a petition to the board of trustees and a petition by the board of trustees.   The section requires the trustees "to petition the county superintendent of schools to call an election in  . . . . said school district, for the determination of the question."   No form of petition is prescribed.   This petition was sufficient.   It was quite full

and specific as to the purpose for which it was presented and was *prima facie* authority to the county school superintendent.

It is claimed that the evidence is insufficient to support the finding that the petition was signed by a majority of the heads of families in the district. There was evidence that the signers to the petition were heads of families, but no direct evidence appears in the transcript that they constituted a majority of the heads of families. It appears, however, that the census marshal correctly took the census of all the heads of families, and that the original sheets used by the marshal and showing this census were before the school trustees when the petition was presented to them, and were also used at the trial of this case. They furnished evidence from which, by comparison of the names on the petition with those on the sheets, the fact could be determined whether a majority of all the heads of families signed the petition. We must presume that this evidence was sufficient, inasmuch as it does not appear in the record. It was the duty of the defendant to make out its case at the trial, but on the appeal by plaintiff it became the duty of the latter to show error affirmatively. If, for any reason, these census sheets did not prove what they purported to show, they should have been printed in the record. It was admitted at the trial that the district had a population of over one thousand.

It is claimed that the county superintendent of schools had no power to nominate the election board. The statute in terms directs the county superintendent to call the election and to appoint three qualified electors of the district to conduct the election. He named J. D. Huffman, C. M. Ferdun, and R. L. Graham. Graham was sick and did not attend, and an elector, S. W. Sollars, was chosen to fill the vacancy. Huffman testified: "I was one of the officers appointed to conduct the election. R. L. Graham did not attend. . . . Upon ascertaining this fact the officers of the election and three or four other electors present selected Mr. Sollars in Mr. Graham's place. He was a bystander and freeholder. He took the oath and acted. I was one of the judges and Mr. Ferdun the other. We were electors." On cross-examination he testified: "I don't know but what I and Mr. Ferdun named Mr. Sollars between us, without reference to any other of the electors present. I don't know

anything as to the details of that part of it. There was no record made of any kind. It was a kind of free and easy affair. We all had a chip in it. I think we conferred with the others; I don't know." The complaint sets forth in an exhibit the returns of the election board to the county superintendent, which the law requires to be made. The returns certify to Graham's absence on account of sickness and the appointment of Sollars in his stead. Then follows the verified statement that an election was held May 23, 1896, "to determine whether a high school shall be established and maintained or not in said Salem school district"; the returns recite the names of the inspector, judges (Sollars among them), the clerks, and sets out the oath of office with signatures attached; a list of one hundred and seventy-four voters is given, followed by a certificate signed by the inspector, judges, and clerks, certifying that one hundred and seventy-four electors voted at the election; the tally list is set forth, showing the vote to have been "For the high school, one hundred and forty; against the high school, thirty; blanks, four"; and this is attested and signed by the inspector, the judges, and clerks. It was held in *Sprague v. Norway*, 31 Cal. 174, where an inspector appointed by the supervisors did not attend and the judges filled the vacancy instead of his being appointed by the electors present, that it was not such irregularity as vitiated the election in that precinct provided the result of the election was not thereby changed. (Approved in *Keller v. Chapman*, 34 Cal. 635; *Preston v. Culbertson*, 58 Cal. 198. See, also, 1 Dillon on Municipal Corporations, sec. 197; *Atkinson v. Lorbeer*, 111 Cal. 419.)

It is objected that the polls should have been opened earlier and closed earlier. (Citing *People v. Caruthers School Dist.*, 102 Cal. 184.) Section 1597 of the Political Code, provides that in districts such as this one "the polls must not be opened before 9 o'clock A. M., nor kept open less than four hours." The notice of election required the polls to be kept open from 2 o'clock P. M. until sunset. This was a sufficient compliance with the law.

The superintendent of schools directed the notice of election to be published in the "Lodi Sentinel," a weekly newspaper published in said district, and the proof is that it was so pub-

lished.   Appellant is in error in claiming that the notice required publication in the "Lodi Weekly Sentinel."

It is objected that the notice did not remain posted for the fifteen days required by law.   The proof is that it was duly posted on May 6, 1896.   The election was held on May 23d, following.   It was not necessary to prove that the notice remained posted each day after it was posted.

There are numerous other assignments, but we find none importing prejudicial error.

The judgment and order should be affirmed.

Cooper, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Van Dyke, J., Harrison, J., Garoutte, J.