[Sac. No. 926.   Department Two.—December 22, 1903.]

## S. C. BROWN et al., Appellants, v. CITY OF VISALIA et al., Respondents.

Public Schools—Municipal Incorporation Act—Primary and Grammar Schools—Limitation of Levy—Revenue for High School.—
A city of the fifth class, organized under the Municipal Corporation Act of 1883, which limited its power to the establishment of primary and grammar schools, and to the levy of a maximum tax for their support, has additional power, under the subsequent enactment of sections 1669, 1670, and 1671 of the Political Code, to establish and maintain a high school within the limits of the city; and such limitation of the amount of levy under the Municipal Corporation Act has no application to the matter of providing a revenue for the maintenance of the high school so established.

Id.—Levy of Taxes for High School—Estimate of High-School Board.—It is the duty of the board of trustees of such city to levy a special tax for the support of the high school established therein, upon the estimate of the high-school board, whose duty it is to make such estimate yearly after the establishment of the high school.

APPEAL from a judgment of the Superior Court of Tulare County.   W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Alfred Daggett, and Maurice E. Power, for Appellants.

D. E. Perkins, and Bradley & Farnsworth, for Respondents.

LORIGAN, J.—This appeal involves the validity of a tax levy for high-school purposes, made by the board of trustees of the city of Visalia.

A demurrer to the complaint, seeking to enjoin the collection of such tax, was sustained, and plaintiffs declining to amend, judgment was entered against them, and they appeal.

Visalia is a city of the fifth class, organized under the Municipal Corporation Act of 1883 and amendments thereto, and has therein primary and grammar schools, and a high school and high-school district, duly organized and established under sections 1669, 1670, 1671 of the Political Code, as enacted in 1893 (Stats. 1893, pp. 268, 274), the boundaries of said

district being commensurate with those of the said city of Visalia.

In October, 1890, the board of education of said city, as such, presented to the board of trustees thereof an estimate of the amount of money required from said city, to maintain the primary and grammar schools therein for the current year, after deducting the amount which would probably be received from the state and county apportionment for that purpose. This estimate was twelve hundred and fifty dollars.

Said board at the same time, but constituted however as a high-school board, pursuant to the requirements of subdivision 14 of said section 1670 of said Political Code, also presented to the said trustees a separate, tabulated estimate of the amount of money required for conducting said high school in said city for the current year—said amount being something over eleven thousand dollars.

Thereafter, said board of trustees made its annual levy of taxes for municipal purposes, and in addition to a levy for primary and grammar school purposes, included therein a levy of eighty-four cents on each one hundred dollars for the high-school fund, based on the estimate of said high-school board, as presented to said trustees.

It is this levy of eighty-four cents that the appellants claim is void.

This contention is based upon certain provisions of the Municipal Corporation Act which govern the levy of taxes in municipalities of the fifth class, such as the city of Visalia, and which appellants claim limit the amount of the levy which the board of trustees could make for the support of public schools established within the city, including primary, grammar, and high schools.

Referring to these provisions, on which this claim is based, subdivision 9 of section 764 of the act vests in the board of trustees power to levy and collect annually a property tax which shall be apportioned as follows: " . . . For school fund not exceeding twenty cents on each hundred dollars . . . ," or possibly, under another section of the act, twenty-five cents on each hundred, for the like purpose. It is of no moment to the question involved here which provision governs, because the amount levied is in excess of either limitation.

Section 978 thereof, defining the powers and duties of the board of education of such cities of the fifth class, authorizes them, first, "to establish and maintain public, primary, kindergarten, grammar, and evening schools." From the averments in the complaint it is apparent that the only schools maintained in said city under said section are primary and grammar schools.

By subdivision 8 of the same section said board is also authorized "to determine annually the amount of money required for the support of the public schools and for carrying into effect all the provisions of law in reference thereto," and "to submit . . . a careful estimate of the whole amount of money to be received from the state and county, and of the amount to be required from such city for the above-mentioned purposes; and the amount so found to be required from the city shall, by the board of trustees, be added to the above amounts to be assessed and collected for city purposes, and when collected the proceeds thereof shall be immediately paid into the school fund of such city, to be drawn out only upon the order of the board of education."

These are the only provisions in the Municipal Corporation Act to which our attention is directed, or which have any bearing upon the subject under consideration.

It is insisted by respondent that these sections of the code have no application to the matter at issue; that the levy provided for under the Municipal Corporation Act is for primary and grammar school purposes only; that under the law none of said funds can be applied to high-school purposes, and that the money to be levied for such high school is to be levied by said board of trustees, not by virtue of the sections of the Municipal Corporation Act, but, under various subdivisions of section 1670 of the Political Code. These subdivisions, in as far as they are necessary to illustrate the point made by counsel for respondent, are as follows:—

Subdivision 7 of said section (Stats. 1897, p. 81), provides: "In any city . . . which shall have established a high school, the board of education or board of school trustees shall constitute the high-school board and shall have the management and control of said high school."

Subdivision 14 thereof declares that: "In any city . . .

which shall have voted to establish and maintain a high school, it shall be the duty of the high-school board therein to furnish to the authorities whose duty it is to levy taxes . . . an estimate of the cost of purchasing a suitable lot . . . and erecting a suitable building, of furnishing the same . . . and of conducting the school for the school year. . . . It shall be the duty of said board, each and every year thereafter, to present to said authorities . . . an estimate of the amount of money required for conducting the school for the school year."

Subdivision 15 provides that: "When such estimates shall have been made and submitted it shall be the duty of the authorities whose duty it is to levy taxes in said city . . . to levy a special tax upon all of the taxable property of said city, sufficient in amount to maintain the high school, or to purchase the site, erect a building, or improve the buildings or grounds. Said tax shall be computed, entered upon the tax-roll, and collected in the same manner as other taxes are computed, entered, and collected."

And subdivision 18 of said section provides that all moneys so collected from a levy of such tax shall be paid into the treasury of the city, to the credit of the high-school fund, and paid out upon the warrants of the high-school board.

These provisions, with the sections cited from the Municipal Corporation Act, constitute all the statute law upon the subjects, and upon a comparison and consideration of these provisions relied on by the respective parties, with such light as is thrown upon the subject in a general way by decision of this court relative to the organization of high-school districts, the power of their boards and the duty to provide for high-school maintenance, we are satisfied that the contention of respondent must be sustained.

The stress of appellants' argument, that the provisions of the Municipal Corporation Act are conclusive upon the power to levy taxes for any school purpose, rests upon the assumption that the term "school fund" in section 764 of said act comprehensively embraces the amounts to be levied for all school purposes—primary, grammar, and high school—and that the term "public schools" in section 798 embraces all schools within the public school system as defined by the constitution. (Const., art. IX, sec. 6.)

The fact is, however, that the Municipal Corporation Act of 1883, including the sections relied on, was in existence long before any valid legislation was enacted (Pol. Code, secs. 1669, 1670, 1671,—Stats. 1893), providing for the organization of high-school districts and the establishment and maintenance of high schools, and it can hardly be assumed that such schools were comprehended within the terms "public schools," or "school fund," as used in the Municipal Corporation Act, when they had no existence in fact. At the time this Municipal Corporation Act was passed, the legislature, in harmony with the constitutional requirement (art. IX, sec. 5), had provided for a system of common schools which embraced only primary and grammar schools, and all existing legislation on the subject had in view solely the establishment and support of such schools.

Under the law they were, and are, to be supported primarily from the state fund and the fund derived from county taxes, and these funds are required to be devoted exclusively to that purpose (*Stockton School District* v. *Wright,* 134 Cal. 67), by the boards of education or boards of school trustees under whose control they are placed, supplemented by such an amount, derived from municipal taxes, as will make up the sum actually necessary for their support for the school year. It will be observed, too, that the only schools which the board of education is authorized to maintain, under the first subdivision of section 798 of the act, and necessarily over which it has control, aside from kindergarten and evening schools, are primary and grammar schools.

This being true, it would seem only a reasonable conclusion to reach, that the fund to be provided by the trustees on the estimate of said board, and under the act, is for the only purpose the board can expend it—for maintaining the established primary and grammar schools.

The board is not authorized to establish high schools, or to require or expend money for their maintenance; this latter power, it will be observed further on, belongs exclusively to the high-school board, and we are satisfied that this is what section 798 of the act contemplates, and alone contemplates, because the amount to be levied by the city is to be determined by taking as a basis of calculation the prospective state and

county fund, and this is a proper factor to be taken into consideration only in estimating a fund for primary and grammar school purposes. So that construing this provision of itself, and in view of the fact that when it was enacted (because it is the same now as when originally passed in 1883) there were no high schools in existence, and in the light of the constitutional provision which, while making high schools part of the school system, provides that "the entire revenue derived from the state school fund and from the general state school tax shall be applied exclusively to the support of primary and grammar schools," together with the fact that the moneys derived from the county taxes can only be applied to maintaining primary and grammar schools, it is a reasonable deduction to be arrived at, that the amount so to be estimated by the board of education, and the amount to be levied by the trustees on such estimate—as far, at least, as high schools are concerned—is the difference between what would probably be received from the state and county to be exclusively devoted for primary and grammar purposes, and the total amount actually needed from the city, and authorized to be levied by the trustees for that purpose.

Aside from this, however, the true solution of the question, we think, is to be reached more from a consideration of the subdivisions of the Political Code than an examination of the provisions of the Municipal Corporation Act. These code provisions (secs. 1669, 1670, 1671), providing for the establishment and government of high-school districts, and particularly the subdivisions of section 1670, heretofore set out, to our mind leave no doubt upon the subject. These provisions were intended to, and did, establish a system of schools—high schools—which, while contemplated by the constitution, still no provision had theretofore been made for their organization and establishment.

Primary and grammar schools existed in all communities throughout the state, and their establishment and maintenance, whether existing in, or outside of, municipalities, had from the earliest date in the educational system of this state been fully provided for by law. In establishing high schools, the legislature—as nothing of a similar character had heretofore existed—had to provide a complete scheme for their establishment, the method of their government, and the manner of their

maintenance. While it was intended to make their establishment, as the constitution provided, a part of the public school system, it was equally intended to make them entirely distinct from primary and grammar schools—a different educational instrumentality, governed by a different board, provided with a distinct fund, to be secured in a different way from that provided for securing funds for the common schools. The whole scheme of their creation evinces this purpose.

While it is provided by subdivision 7 of section 1670 of the Political Code that the board of education in the city where the high school is established shall have control of that school, it is distinctly provided that such control shall be had, not as a board of education, but as a high-school board. For all purposes of controlling primary and grammar schools, it shall constitute a *board of education,* but as to high schools, it shall constitute a *high-school board;* and this distinction is made necessary because, under section 798 of the Municipal Act, the moneys obtained under the general levy provided for therein shall constitute the "school fund," to be paid out under order of the *board of education,* while by subdivision 18 of section 1670 of the Political Code the taxes derived under subdivision 14 of said section shall be paid into the said treasury to the credit of the *"high-school fund,"* and paid out only on the warrants of the *high-school board.*

Now, coming to the vital question as to how this high-school fund is to be obtained: It must be conceded that, as far as the power of the board of education is concerned to estimate the amount necessary to conduct the schools of the city, as provided by section 798 of the act, it does so solely and exclusively as a *board of education.* In estimating the amount necessary for maintaining the high school, by subdivision 14 of section 1670, it acts exclusively and solely as a *high-school board.* As these boards are distinct, and as the board of education, as such, has control only over the school funds provided for the maintenance of primary and grammar schools, the only estimate it can make and furnish the board of trustees in that capacity is for the purposes over which it alone has control, to wit, primary and grammar school purposes; and as the board of trustees is required, under the same section, to add such amount found necessary by the board of education (less

such amount as probably will be received from the state and county for school purposes) to the other amounts to be assessed for city purposes, it must reasonably follow that, as its power to make the levy proceeds solely from the estimate of the board of education, that the only levy it can make under its general power to provide not exceeding twenty per cent for a school fund, is to provide the fund which the board of education as such can alone require and control, to wit: the fund necessary for primary and grammar school purposes only.

On the other hand, by subdivision 14 of section 1670 of the Political Code, it is made the duty of the high-school board, as distinguished from the board of education, to furnish to the authorities whose duty it is to levy taxes (the board of trustees, if the high-school district is in a municipality; the board of supervisors, if the district is outside a municipality) each and every year after the establishment of a high school, an estimate of the amount of money required for conducting the school for the school year.

Subdivision 15 of the same section makes it obligatory on the authorities whose duty it is to levy taxes for said city to levy a *special tax* upon all the taxable property of said city, sufficient in amount to maintain the high school, and provides that said tax shall be computed and collected in the same manner as *other taxes* are computed and collected.

It will be observed from the reading of these provisions that this estimate is to be made by the *high-school board,* and that the levy is not to be made under any general provisions of the Municipal Corporation Act empowering the city to levy taxes for school purposes, but is to be the levy of a *special tax,* and therein, we think, lies the solution of the whole question. The *board of education,* acting under the Municipal Corporation Act, and having control over the fund for primary and grammar school purposes only, estimates the amount necessary for that purpose as such board, and under the general provision to levy a tax for a school fund, the board of trustees upon such estimate does so for the only purpose the board of education is authorized to require it; the *high-school board,* acting as an independent body under the Political Code, makes its estimate for a high-school fund as distinguished from any other school fund, and the board of trustees, under subdivision 15 of the

code, levy a *special tax*, to be collected as other taxes of the municipality are collected.

It was only proper, in providing for the establishment and support of high schools, that the legislature should provide that the revenue therefor should be collected by special tax, because when the establishment of these schools was authorized and provision made for their maintenance, the Municipal Corporation Act had already placed a limit upon the amount which could be levied by the trustees for existing primary and grammar schools—a limit within which a reasonable fund for those purposes, and no other, might be provided.

Under such circumstances, it would hardly have been fair to require the amount necessary to establish and maintain a high school to be obtained within the same limitation. The result might be that revenue obtained within the limitation would not furnish a sufficient amount for the complete maintenance of either, and hence the efficiency of both institutions, which the law designed to foster, would be impaired.

On the other hand, by requiring the revenue for the high school to be collected by special tax, the power of the board of trustees to fully provide within the limitation for primary and grammar schools would not be impaired. This construction of these statute provisions is all the more reasonable when we take into consideration the fact that it has always been the duty of a municipality to establish and maintain primary and grammar schools, while it is entirely optional with it whether it shall establish and maintain a high school. In the beginning of this opinion we referred to the fact that the matter of high schools had been before this court several times, and while the particular point now under review was never presented, enough was involved to warrant the court in determining that high schools are governed by different laws of taxation than obtain in school districts generally, whether embraced within municipalities or not. (*Chico High School Board* v. *Supervisors,* 118 Cal. 115; *Board of Education etc.* v. *Board of Trustees of Woodland,* 129 Cal. 599.)

In the first case, after quoting the constitutional provision of section 6 of article IX, the court, at page 119, says: ''It will be seen from this constitutional provision that while 'high schools' are an integral part of our public school system, the expense

of their maintenance is to be met by necessary taxation, independent of the general school tax, and of the revenue derived from the state school fund. We think it apparent from the language used in 1670 . . . that the legislature comprehended that the duty of levying taxes for the support of high schools would, under different circumstances, devolve upon different boards or authorities. Hence the high-school board is required to furnish estimates of the amount of money required 'to the authorities whose duty it is to levy taxes.' " In *People* v. *Lodi High School District,* 124 Cal. 694, the court had under review the constitutionality of section 1670 of the Political Code. In that case the high-school district was not formed in any city, and hence the duty of levying taxes for its maintenance under said section was cast on the supervisors. The principle involved, however, is the same as if the high-school district embraced a city of the fifth class, because by section 1818 of the Political Code a limitation is as effectually placed on the powers of the board of supervisors, both as to the purpose of the fund and the amount of the levy, as is placed on the trustees under the Municipal Corporation Act.

In the case referred to in considering subdivisions 14 and 15 of said section relating to the levy of a special tax for the support of high schools, the court says: "It is claimed that the section is special legislation because it takes from the operation of the general law for the levy of taxes a certain class of school districts, and it applies to these districts alone, and vests in the board of supervisors a power to levy a tax which the general laws of the state do not give that board; and gives to the high-school board initiatory powers with respect to taxation not possessed in any other district. All this may be true without making the law special legislation in the sense the term 'special' is used in the constitution. It is within the power of the legislature to constitute these schools, and to provide for their support by methods different from those adopted for like purposes as to other schools. In a sense the provision had to be special, for no part of the state school fund or general school tax could be used to support the high school. The law is general in its operation, for it applies alike to all cities, incorporated towns, and school districts having a population of one thousand inhabitants or more; and it is general in its purpose,

for it gives to all the inhabitants of the state similarly situated equal opportunity to avail themselves of the benefits to be derived from these schools. The nature and objects of these schools suggest a classification different from the common school corporation, and rationally justify the diversity in the legislation as to them."

We are satisfied that high schools were intended to be and are organized, and are required to be maintained under laws separate and distinct from those applying to other schools, and that the complete scheme for their organization, government, and maintenance is to be found in the provisions of the Political Code above cited. That the limitation as to the amount which, under the municipal act, a city of the fifth class may raise as a school fund, has no application to providing revenue for the maintenance of a high school established in said city, but that under the provisions of subdivisions 14 and 15 of section 1670 of the Political Code an additional duty is imposed upon the board of trustees to levy a special tax to be collected as other taxes are collected for the support of such schools.

Entertaining these views, the judgment of the lower court is affirmed.

McFarland, J., Angellotti, J., Shaw, J., Van Dyke, J., and Henshaw, J., concurred.