[Civ. No. 268.   Third Appellate District.—September 26, 1906.]

FANNIE W. BANCROFT, Appellant, v. E. J. RANDALL et al., BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY, Respondents.

HIGH SCHOOL BUILDING—LEVY OF TAXES.—The authority given to levy taxes for the maintenance of high schools flows from the same source as the authority to levy taxes for the construction of buildings in which the schools are to be held, and the latter power is coextensive with the former.

ID.—POWER OF LEGISLATURE—SPECIAL METHODS FOR SUPPORT OF HIGH SCHOOLS.—It is within the power of the legislature to constitute high schools, and to provide for their support by special methods different from those adopted for other schools; and the provisions of the high school acts are not to be controlled by the provisions relating to the common schools.

ID.—VOTE OF PEOPLE NOT REQUIRED.—No vote of the people of the high school district is necessary to authorize the supervisors to levy a tax for a high school building in a union high school district, upon a proper estimate made as provided for by law.

ID.—SUFFICIENCY OF ESTIMATE—TIME—FORM—AUTHENTICATION—JURISDICTION OF SUPERVISORS.—An estimate filed in August, under which a levy of taxes was made September 21st, is a sufficient compliance with the law as to time.   No particular form is required for the estimate, and no particular details are required.   Where it sufficiently shows the source from which it emanated, it does not require the signature of all the trustees of the high school district, and is sufficiently authenticated by their secretary, as a basis for the exercise of the jurisdiction of the board of supervisors, who act in a quasi-judicial capacity in the matter.

ID.—PRIOR PURCHASE OF LOT NOT REQUIRED—VOTE FOR PURCHASE UNNECESSARY.—It is not essential that there shall be a prior purchase of a lot before the levy of taxes for a high school building, before a lot is provided for; nor need the purchase of a lot on which to locate the high school building be authorized by a vote of the people.

ID.—INSUFFICIENT LEVY FOR BUILDING—SECOND LEVY.—Where the first levy of taxes was insufficient to meet the estimate for the building, a second levy is authorized to raise the amount necessary.

APPEAL from a judgment of the Superior Court of Contra Costa County, and from an order denying an injunction. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

J. S. Reid, and Curtis Hillyer, for Appellant.

W. S. Tinning, and A. B. McKenzie, for Respondents.

CHIPMAN, P. J.—The action is to enjoin defendants from levying any special tax upon the taxable property within the Mount Diablo Union High School District, Contra Costa county, "for erecting any building for said district or for any purpose or purposes kindred thereto."

A general demurrer to the complaint was sustained without leave to amend and judgment passed for defendants.

The appeal is from the judgment and from the order denying an injunction.

It is alleged in the complaint: That plaintiff is the owner of real estate, as her separate property, situated in said Union High School District; that the board of trustees of said district have made what purports to be an estimate of the cost of constructing a building for the use of said district, estimated to cost $10,000, which estimate has been presented to defendants with request that they levy a special tax upon the taxable property of said district sufficient in amount to erect said building; that the estimate so furnished was as follows:

"At a meeting of the Trustees of the Mt. Diablo Union High School, held August 20, 1904, the Board estimated that the sum of Four Thousand One Hundred Dollars ($4,-100.00), additional to the amount on hand, would be necessary to the maintenance of the Mt. Diablo Union High School for the school year 1904-1905; and also, that the sum of Ten Thousand Dollars ($10,000.00), additional to the building fund already on hand, will be necessary to erect the proposed High School in said District.

"Therefore, we, the Board of Trustees of Mt. Diablo Union High School, ask the Hon. Board of Supervisors of Contra Costa County to levy such a tax as will raise the aforesaid amounts.

"ANNIE LOUCKS,
"Sec. Board of Trustees.

"Endorsed: Filed Aug. 24, 1904. J. E. Rodgers, Clerk. By J. H. Wells, Deputy Clerk."

That said district "does not now, never did, own any lot upon which the, or any, proposed building might be erected"; that the said trustees have never been directed by any vote of said district "to purchase, or receive, or select or accept or otherwise acquire, any school lot, or to build any schoolhouse; and no such vote for any purpose has ever been had at all"; that about September 1, 1903, said trustees furnished to said board of supervisors what said trustees pretended and what purported "to be an estimate of the construction of a building for the use of said" district, as follows:

"The sum of Four Thousand Dollars being necessary to maintain Mount Diablo Union High School for the present School Year 1903-1904, the Board of Trustees of said school ask that your Hon. Board levy such a tax as will produce the said sum of Four Thousand Dollars ($4,000.00).

"They also find that it being necessary to erect a high school building and improving grounds, erecting windmill, tank, & etc., the sum of twenty thousand dollars ($20,000.00) will be necessary to complete the above work, and therefore ask your Honorable Board to levy such a tax as will produce the said sum of twenty thousand dollars ($20,000.00).

                              "ANNIE LOUCKS,
"Secretary Board of Trustees of Mount Diablo Union High
        School.

"Endorsed: In the matter of M. Diablo Union High School. Estimate of amount of money required to maintain Mt. Diablo Union High School for fiscal year 1903-4 and to erect building. J. E. Rodgers, Clerk. By J. H. Wells, Deputy Clerk."

That pursuant to said estimate, said trustees procured defendants, on or about September 21, 1903, to levy a special tax upon all the property in said district; that the tax so levied, "in the judgment of the said board of supervisors, was for an amount sufficient to build the said proposed new high school building, aggregating the sum of $5,016.53, according to the report of the county auditor of said Contra Costa county, filed on the twenty-first day of September,

1903''; that ''almost all of the aforesaid special tax levied in the year 1903 has been paid to the tax collector of said Contra Costa county . . . and is now in the custody of the County Treasurer to the credit of said . . . district''; that plaintiff has protested to the defendants against the levy of any special tax for the erection of any building for said district, on the ground, among others, that said defendants have ''no jurisdiction to entertain any such application . . . but said board of supervisors, acting by the defendants herein, threaten to, and unless restrained . . . by this honorable court, will levy another special tax upon all the taxable property of said . . . district for such amount as in the judgment of the said board of supervisors will be sufficient to erect the said proposed school building,'' to the injury of plaintiff and other taxpayers of said district; wherefore, etc.

Plaintiff urges want of jurisdiction in defendants to act in the premises, on the grounds, to wit: 1. That the trustees of the high school had never been directed by any vote of the district to purchase, receive, select, accept, or otherwise acquire any school lot or to build any schoolhouse; 2. That no estimate was ever presented for such purposes; 3. That no school site had been selected; 4. That the district owned no lot on which to erect a building; 5. That the first levy was void and the moneys thus collected cannot be used for the purposes named; 6. That if the defendants ever had jurisdiction to levy any tax, it was exhausted by the making of the first levy.

It is urged that the board of supervisors have no power to levy special taxes for school purposes except such as are conferred by statute; that it can levy such taxes for a union high school only upon an estimate made by the school trustees (Pol. Code, sec. 1670, subd. 14). It is next contended that these trustees have only such powers as are conferred by the same code, section 1670, subdivision 11, which, it is claimed, are the same as those of boards of common school trustees; that such latter school trustees can build schoolhouses or purchase or sell school lots only ''when directed by a vote of their district'' (Pol. Code, sec. 1617, subd. 5). It is hence argued that as by no vote were the trustees ever directed to build a schoolhouse, no authority rests in the board of supervisors to levy the tax. Many of the provisions of the high school acts, as set forth in sections 1669 to 1674,

inclusive, of the Political Code, were given careful and some-what extended examination and construction in *People* v. *Lodi High School District,* 124 Cal. 694, [57 Pac. 660]. It would be useless repetition to again explain the scope and meaning of the provisions which established our high school system of education.

The authority there given to levy taxes for the mainte-nance of these schools flows from the same source as the au-thority to levy taxes for constructing buildings in which the schools are to be held, and the latter power is coextensive with the former. Subdivision 14 of section 1670 makes it the duty of the high school board "to furnish to the authori-ties whose duty it is to levy taxes . . . an estimate of the cost of . . . erecting a suitable building . . . , " and to fur-nish such estimate to such authorities (the board of super-visors here). "When such estimate shall have been made and submitted it shall be the duty of the authorities whose duty it is to levy taxes in said . . . high school district to levy a special tax upon all the taxable property of said . . . high school district, sufficient in amount to . . . erect the building. . . . Said tax shall be computed, entered upon the tax-roll, and collected, in the same manner as other taxes are computed, entered and collected." (Pol. Code, sec. 1670, subd. 15.) In speaking of the scheme of taxation provided by these sections to maintain high schools, the court said in the Lodi high school district case, *supra:* "It is within the power of the legislature to constitute these schools and to provide for their support by methods different from those adopted for like purposes as to other schools."

It is true the point under discussion was whether the law is obnoxious to constitutional objection as being special legislation. But the reasoning leads also to the conclusion that the provisions of the high school acts are not to be con-trolled by the provisions relating to the common schools. (See, also, *Brown* v. *City of Visalia,* 141 Cal. 372, [74 Pac. 1042].)

In our opinion no vote of the people of the district was necessary to authorize the defendants to act, upon a proper estimate being made and presented as provided in the act.

Objection is raised to the sufficiency of the estimate in mat-ter of form and substance. It is claimed that subdivision 14, section 1670, requires the estimate to be presented on Sep-

tember 1st. It was filed in August and the defendants made the levy, as alleged in the complaint, on September 21st. This was a sufficient compliance with the law as to time.

The objection that the document is not an estimate but a mere letter, without seal or other authentication, and is but "the conclusions of the so-called secretary," is without merit. The section prescribes no particular form for the estimate, nor does it call for details. If the supervisors should deem it insufficient, they could call for specifications or refuse to act upon it. The estimate was sufficient as a basis for the exercise of jurisdiction by the board of supervisors who act in a quasi-judicial capacity in the matter. (*People* v. *Lodi High School District,* 124 Cal. 694, [57 Pac. 660].) We think the estimate sufficiently shows the source whence it emanated and is sufficiently authenticated. It was not necessary that all the trustees should attach their names to it.

It is alleged in the complaint "that the said trustees have never been directed by any vote of the said . . . district to purchase, or receive, or select or accept or otherwise acquire, any school lot, or to build any schoolhouse." It is argued, first, that subdivision 6 of section 1670 refers to the lot on which the building is to be erected; and, second, that the district must own the lot before the supervisors can make the levy for the schoolhouse, and that the lot must be selected by vote of the district.

The meaning of subdivision 6 is not entirely clear, but we think it refers to the general location of the school and not to the particular lot at the place where the school is to be located. The union high school district is made up of several common school districts, and before it can be known upon what particular lot of ground the schoolhouse is to be erected, the general locality or town within some one of the common school districts must be determined. The act provides that the district may maintain the school without owning any building by leasing suitable premises (sec. 1670, subd. 6). No lot could have been purchased until the general location of the school had been decided upon. The clause of the complaint above quoted is not inconsistent with the existence of the fact that the district either owns a lot by gift or has made provision for so or otherwise acquiring one. The averment is that the trustees have never been "directed by any

vote to purchase a lot." The statute points out the method
of purchasing or acquiring the lot. Subdivision 14 requires
the trustees to furnish the board of supervisors "an estimate
of the cost of purchasing a suitable lot," and subdivision 15
gives the supervisors authority to levy the necessary tax "to
purchase the site," when such estimate is made. It is not
necessary that there should be a vote of the district as in
the case of purchasing a lot for a common schoolhouse. The
authority to purchase the lot is the same as the authority
to provide for the maintenance of the school or the erec-
tion of a suitable building or the leasing of a suitable build-
ing. These are to be accomplished by an estimate of the cost,
presented by the trustees to the supervisors, to be followed
by the necessary tax levy. It might be more satisfactory to
the supervisors to know, when the estimate for a building
is presented, that the lot has been provided for or that if not,
the estimate included the cost of the lot also.

But it must be presumed that both the trustees and the
supervisors will discharge their duties in accordance with
law, and it cannot be assumed in this action that the super-
visors will act improvidently or in violation of law. Besides,
we do not think that there is anything in the statute to pre-
vent the trustees and the supervisors from making provision
for the building before a lot is provided for.

It appears from the complaint that the estimate made in
1903 for a building, improvements, etc., was $20,000, and
that the levy made realized only something over $5,000, most
of which is now in the treasury to the credit of the building
fund; that the estimate of 1904 calls for $10,000, "additional
to the building fund now on hand." It is not alleged that
the amount raised by the first levy was sufficient to build the
schoolhouse, nor does it appear that that amount was the
amount which the supervisors intended to raise by the levy.
The averment is that the supervisors will, unless restrained,
"levy another special tax . . . for such an amount as . . .
will be sufficient to erect the said proposed building." It is
claimed under *Martin* v. *Board of Supervisors,* 103 Cal. 668,
[37 Pac. 758], that there is no power given to levy the tax for
a building unless the district has a lot; that estimates cannot
be made separately, for the site only or the building only.
In the Martin case, cited, the action was *mandamus* to com-
pel the supervisors to estimate the cost of a *county* high

school building. No legal provision had been made for the purchase of a lot, and presumably the supervisors were unwilling to proceed until this was done. All that the court was called upon to decide was whether their judgment could be controlled to provide for a building when the statute gave them the power to provide for acquiring a lot and erecting a building by the same estimate. It was not necessary to the decision that before they could estimate for a building they must have first become the owner of a lot. However this may be, the complaint here avers only that the trustees do not now, and never did, own any lot. But they may have made provision for a lot, and we must assume if they have not that they will do so before erecting any building.

There seems to be no special provision for estimating the cost of the building and making levies of taxes by installments, or for making additional levies of taxes to complete unfinished work. A reasonable construction should be put upon the statute such as would effectuate its main object if it can be done without violating settled principles of construction. Here the first estimate was for $20,000, of which only $5,000 was raised by the levy. The second estimate is for $10,000 additional to the fund on hand, alleged to be $5,000, or about that sum. We are not told why the first money raised was not expended, or why an additional amount became necessary, or why the supervisors failed to make the levy large enough to raise the requisite amount estimated by the trustees. All we know is that the first estimate was for $20,000, and only $5,000 was raised, and that an amount of $10,000 additional to the $5,000 was estimated as necessary to erect the proposed building. If it be true, as claimed by appellant, that the supervisors exhausted their power to make a levy under the first estimate (which we do not decide), we see no reason why, when it was found that the building fund was inadequate, the trustees might not make a further estimate or that the supervisors might not, on such estimate, make a further levy.

We can discover no infirmity in the first levy. The money raised by it belongs now to the building fund, and in making the second estimate the end is reached by estimating the requisite additional amount quite as definitely as by making the estimate $15,000, as is claimed it should have been.

The suggestion that this view leaves the supervisors with unrestricted powers to keep on from year to year adding to the cost of the building presupposes that both the trustees and the supervisors will proceed recklessly and without regard to the welfare of the property holders. On the other hand, we must presume official duty regularly performed, and if the power here sought to be restrained is denied, the district might find itself seriously embarrassed.

It seems to us that the statute is sufficiently broad to justify the course being taken to secure a building for the school. Respondents make the point, not raised in the lower court, that injunction will not lie in anticipation of the action of a judicial body; citing *Barto* v. *Board of Supervisors*, 135 Cal. 494, [67 Pac. 758]. We have thought it more satisfactory to dispose of the questions raised by appellant without considering the point suggested by respondents.

The judgment and order appealed from are affirmed.

McLaughlin, J., concurred.

Buckles, J., concurred in the judgment.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 22, 1906.