|129  599|
140  562|
141  380|
|129  599
|144  334
|129  599
|148  382

[Sac. No. 814.   Department Two.—September 4, 1900.]

# BOARD OF EDUCATION OF CITY OF WOODLAND, Appellant, v. BOARD OF TRUSTEES, etc., Respondent.

Taxation—Support of High School—Estimate by High School Board—Power of City Trustees—Construction of Code.—Under subdivisions 14 and 15 of section 1670 of the Political Code, providing that the high school board shall furnish to the authorities, whose duty it is to levy taxes, "an estimate of the amount of money required for conducting the school for the school year," and making it the duty of the board of trustees of a city, to whom the estimate is made, to levy a special tax "sufficient in amount to maintain the high school," the power or discretion is vested in the board of trustees as the taxing body to determine what amount will be sufficient for the purpose, and they are not concluded by the estimate made by the high school board.

Id.—Support of Common Schools—Legislative Power of Trustees—Municipal Corporations Act—Directory Statute.—Subdivision 8 of section 798 of the municipal corporations act, providing that the board of trustees is to add to the levy of taxes for city purposes "the amount so found [by the board of education] to be required," is to be construed as directory only, and as not restricting the legislative functions of the board of trustees of the municipality to determine the amount of money to be raised by taxation for school and other municipal purposes.

Id.—Construction of Constitution—Maxim—Power of Taxation by "Corporate Authorities."—Under article XI, section 12, of the constitution of this state, providing that "the legislature shall have no power to impose taxes upon counties, cities, towns, or other public or municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes," the words "corporate authorities thereof" are to be construed distributively—reddendo singula singulis—as referring to the governing body of each of the several municipalities and quasi municipalities referred to in the section, and as importing the legislative department of the municipality only, in which is intended to be vested the legislative power of taxation for all municipal purposes.

Id.—School Districts—Classes Distinguished—Quasi Municipalities Under Code—Query.—Under the municipal corporations act, in cities of the first five classes, the educational department has no legislative power, but that is vested is the legislative

council or board of trustees of the city; but all other cases are governed by the Political Code under which the city territory with its inhabitants constitutes a school district, which is a public corporation, or *quasi* municipality, governed by "boards of education," having the same functions as the "boards of trustees" of country school districts. Whether this distinction of classes is constitutionally valid is a question suggested, but not decided.

APPEAL from a judgment of the Superior Court of Yolo County. Matt. F. Johnson, Judge presiding upon hearing of petition for *mandamus* and sustaining demurrer thereto. E. Gaddis, Judge rendering final judgment appealed from.

The facts are stated in the opinion of the court.

Hudson Grant, for Appellant.

W. A. Anderson, for Respondent.

SMITH, C.—Application for writ of *mandamus* requiring the defendant to levy taxes for the support of the common schools of the Woodland school district, and for the support of the Woodland high school. Judgment was rendered for defendant on demurrer to the petition, and plaintiff appeals.

Woodland is a city of the fifth class, organized under the provisions of chapter VI of the municipal corporations act of 1883.

The Woodland school district—as authorized by the provisions of section 795 of the act, as amended in 1891 (Stats. 1891, p. 28)—includes a large territory outside the city, which is regarded for school purposes as part of the city. The district is governed by the board of education of the city, whose powers and duties are prescribed by section 798 of the act.

The Woodland high school was organized in and for the Woodland school district under the provisions of section 1670 of the Political Code, and, under the seventh subdivision of the section, is governed by the board of education of the city— constituting, *pro hac vice,* the "high school board," whose powers and duties are prescribed by the tenth and following provisions of the section.

Under the provisions of the statutes cited it is made the duty of the board of education in either case—i. e., whether acting

as such, or as high school board—to make out and present to the board of trustees, on or before a prescribed date, an estimate of the amount of money required for the schools, or the high school, as the case may be. Estimates were accordingly made, both for common schools and for high school, and presented to the defendant—the amounts estimated being, for common schools seven and one-half cents, and for the high school eighteen cents, on the one hundred dollars. The actual levy made by the board of trustees was, for the former, one-quarter of one cent on the one hundred dollars, and for the latter ten cents.

The question presented for consideration is, in each case, whether it was the duty of the board of trustees to levy the whole amount estimated. Two questions are therefore presented—the one relating to the duty of the trustees with regard to the high school, the other to its duty with regard to the common schools of the district.

## The High School Tax.

The question with relation to this tax turns upon the construction of subdivisions 14 and 15 of section 1670 of the Political Code. By the former subdivision, it is provided it shall be the duty of the high school board "to furnish to the authorities whose duty it is to levy taxes, on or before the first day of September [of each year] . . . . an estimate of the amount of money required for conducting the school for the school year"; and, under subdivision 15, on receipt of the estimate it becomes the duty of the board of trustees—as the body "whose duty it is to levy taxes in [the] . . . . school district"—"to levy a special tax upon all the taxable property of said . . . . school district . . . . sufficient in amount to maintain the high school."

The language here used is susceptible of only one construction. The duty imposed is to levy a tax sufficient to maintain the school; which necessarily vests in the taxing body (in this case the board of trustees) the power or discretion to determine what amount will be sufficient for the purpose. Accordingly it was so held in *People v. Lodi High School Dist.*, 124 Cal. 694.

This construction is rendered the more apparent upon com-

paring the act with the act of March 21, 1891 (Stats. 1891, sec. 4, p. 183), of which it is amendatory. Under that act the county superintendent of schools was required to make and certify to the board of supervisors an estimate of the amount required for the high school; and it was made the duty of the board "to levy such a rate as [would] produce the amount estimated to be necessary for such purpose"—"thus leaving the amount of the tax wholly to the discretion of an executive officer, and leaving no discretion in the board." (*McCabe v. Carpenter*, 102 Cal. 469.) It was held, in the case cited, that this was in conflict with section 1, article III, and section 12, article XI, of the constitution, and therefore void. Obviously —as said in *People v. Lodi High School Dist., supra*—the object of the code provisions was "to obviate [this] infirmity in the law of 1891," and to make the law conform to the constitution.

Two arguments to the contrary are, however, advanced, which are worthy of consideration: The first is that, in subdivision 17 of section 1670 of the Political Code, it is provided that, in case the proper authorities should fail to levy the tax as provided in subdivision 15, "it shall be the duty of the county auditor to make such levy, and add it to the tax-roll of said city . . . . [or] school district." The term "levy," it is contended, as used here—and consequently as used in subdivision 15—must be construed as referring only "to the ministerial acts necessary to be performed in assessing and collecting taxes, and not to the legislative determination of the amount to be raised." Otherwise, it must be admitted, on the authority of *McCabe v. Carpenter, supra*, the power conferred upon the auditor would be unconstitutional. But the language used in subdivision 15 is too clear to be construed otherwise than as vesting in the board of trustees the power to determine the sufficiency of the tax required; and, if the term "levy" is to be construed in the same sense in both sections, it must be inferred that it was the intention of subdivision 17 to confer upon the auditor the same function.

Again, it is urged that from the peculiar nature of the school district in this case—as organized under section 795 of the municipal corporations act (Stats. 1891, p. 28)—the func-

tion of levying the tax cannot constitutionally be vested in the board of trustees.  For it is a cardinal principal "that taxes are a grant of the people who are taxed, and the grant must be made by the immediate representatives of the people" (Cooley on Taxation, 41); and here the people of the part of the district lying outside the city have no part in the election of the trustees, and hence are not represented by them.  This objection, it is argued, does not lie to the board of education, whose members are elected by the people of the whole district, and which could, therefore, be vested with the power of taxation.  But here—even if it be admitted that such power could be conferred on the board of education—there is nothing in the act to indicate such an intention on the part of the legislature; but, on the contrary, the power is expressly conferred on the board of trustees.  There is, therefore, no room for inference from the objection urged to the constitutionality of the act as thus construed.  Nor is it necessary for us to determine the question of constitutionality; as so far as the plaintiffs' case is concerned, the result must be the same, however that question be determined.

### The Common School Tax.

The remaining question in the case relates to the duty of the board of trustees as to the levy of the tax for the support of the common schools of the Woodland school district.

On this point it is contended that, by subdivision 8 of section 798 of the municipal corporations act, the function of determining the amount of the tax to be imposed is vested in the board of education, and that the function of the board of trustees is simply the ministerial one of adding to "the amounts to be assessed and collected for city purposes . . . . the amount so found [by the board of education] to be required."

The same question substantially was presented in the case of *Board of Education etc. v. Board of Trustees*, 96 Cal. 42; and it was there determined that "the language of the statute," in a provision substantially the same as the provision here involved, "although imperative in terms, must be regarded as directory rather than mandatory," and "that it was not intended to take from the board of trustees the power or right of de-

termining the amount of money that should be raised by taxation for school purposes in any one year." There are some circumstances peculiar to that case that are alluded to in the decision as confirmatory of the conclusion reached, but the grounds of the decision were in effect that the board of trustees, being "the legislative department of the city government," and as such having the "general charge of the welfare of the city," was to be deemed to have the exclusive right of determining the amount of money to be raised by taxation for school and other municipal purposes; and these grounds are equally applicable to the case at bar.

Here, indeed, the case is stronger. The Sacramento case involved the construction of statutes antedating the constitution of 1879, but the present case must be governed by the provisions of that instrument, if any there be that apply to it. One of these, I think, strongly confirms the reasoning of the court in that case. By article XI, section 12, the legislature is forbidden "to impose taxes upon counties, cities, etc., or other public or municipal corporations, . . . . but may, by general laws, vest in the corporate authorities thereof the power to assess and collect taxes for such purposes." These provisions apply to all kinds of "public or municipal corporations," or, we may say, to all municipalities and *quasi* municipalities. These differ greatly in their organization. In some, as in cities generally, the powers of the government are distributed —as in the state government (Const., art. III)—into separate departments; in others, all the powers of the municipality are vested in one body—as, e. g., in the board of supervisors of a county, the board of trustees of a school district, etc. In the latter case the board of supervisors or board of trustees, or other governing body, constitutes the "corporate authorities" of the municipality, in which may be vested the power to impose taxes; in the former, "reading the proviso distributively— *reddendo singula singulis*"—the expression "corporate authorities" must be construed as referring to the "legislative department" of the municipality only. (*Wells, Fargo & Co. v. Board of Equalization,* 56 Cal. 198.) Accordingly this was the view of the constitution in *McCabe v. Carpenter, supra*—the argument being that, "since the power to levy a tax is purely legislative, it would seem to follow that the power cannot be vested

in any other authority of the local corporation than the body, in which is vested [its] legislative power."

In cities of the first five classes, organized under the municipal corporations act, there is a fourth department entitled the "educational department," the functions pertaining to which are vested in the "boards of education." (Municipal Corporations Act, secs. 247, 410, 570, 670, 795.) But the powers of these boards cannot be supposed to include legislative powers for these, in cities of the first four classes, are vested—without limitation or exception—in the "municipal," or "city," or "common council," and in cities of the fifth class, in the "board of trustees." These constitute, respectively, the "legislative departments" of the cities organized under the act; and in them is vested, not only the general power of legislation, but the power of levying taxes for all municipal purposes. (Municipal Corporations Act, secs. 40 et seq., 319 et seq., 520, 524, 620, 640, 760, 764.) Hence the board of education of such a city must be regarded as a purely executive or administrative body, and therefore as incapable of exercising the power of "imposing taxes." But to construe the language of subdivision 8, section 798 (and similar provisions), of the act as mandatory would be to vest in the board the taxing, which is part of the legislative power, which obviously was not intended. The language used must therefore be held—as in the Sacramento case—to be directory only.

This conclusion, it will be observed, relates only to cities of the classes specified, organized under the municipal corporations act. It must not be extended, therefore, in its application, beyond such cities and other cities similarly organized. In this regard cities are to be divided into two classes, namely, those governed by the provisions of the Political Code, establishing a system of common school (Pol. Code, c. III, tit. III, pt. III), and those of the first five classes organized under the municipal corporations act, or under special charters containing similar organic provisions.

Under the code system the city territory, with its inhabitants, constitutes a mere "school district" (Pol. Code, secs. 1576 et seq.), and hence is a corporate body or *quasi* municipality, distinct from the municipal corporation or city, and

in no way different from the country district in nature or function. (*Hughes v. Ewing,* 93 Cal. 414; *McCabe v. Carpenter, supra.*) Such districts are indeed governed by "boards of education," instead of the "boards of trustees" of the country districts (Pol. Code, secs. 1593 et seq., 1616, 1617); but the former expression "is but another term for" the latter, and the difference is but in name. (*Kennedy v. Miller,* 97 Cal. 434.) Both classes of boards and both classes of school districts derive their corporate existence and functions exclusively from the provisions of the Political Code cited. Hence, as held in *Hughes v. Ewing, supra,* the power of imposing taxes for school purposes may, without constitutional objection, be vested in the electors of the school district, or, perhaps, in the representative body—whether called "board of trustees" or "board of education."

But with the other class of cities it is different. These, too, are sometimes said to constitute "school districts" (Municipal Corporations Act, secs. 570, 795), and are governed by "boards of education," but these terms are used in quite a different sense from that given to them in the Political Code. For here —as we have seen—the "school district" is no longer a separate corporate body, but is merged in the city, and the board of education is but a department of the general city government. Otherwise, the subject of schools would not be embraced in the title of the act, which relates merely to "the organization, incorporation, and government of municipal corporations," and includes the school system of the city only on the hypothesis that it is part of the municipal organization. On any other hypothesis the subject of schools would be omitted from the title, and the provisions relating to schools unconstitutional. (Const., art. IV, sec. 24.)

Whether the provisions of the municipal corporations act, thus withdrawing cities of the classes specified from the operation of the general system of common schools established by the Political Code, are constitutionally valid, is a grave question, but, under the view we have taken of the case, one we need not consider. (*Kennedy v. Miller, supra; San Diego v. Dauer,* 97 Cal. 442; *Kennedy v. Board of Education,* 82 Cal. 483.) But, assuming the validity of the act, it is at least clear—to

repeat the conclusion already arrived at—that the board of education of a city organized under this act must be regarded, not as an independent municipality, or *quasi* municipality, but as a component part of a municipality of which the legislative power is vested in another body, and, therefore, as incapable of exercising legislative functions. We are, therefore, of the opinion—without passing on the question of the validity of the act —that the language used in subdivision 8, section 798, of the municipal corporations act relating to the board of trustees must be regarded as directory only.

We advise that the judgment appealed from be affirmed.

Haynes, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

                    Temple, J., Henshaw, J., McFarland, J.

Hearing in Bank denied.