CARRIER *v.* COMSTOCK.

Opinion delivered May 19, 1913.

1. TAX SALES—OVERDUE TAXES—ENTRY OF WARNING ORDER ON RECORD.—The Act of 1881, p. 65, requires that when a complaint is filed to foreclose a lien for overdue taxes that "on the filing of such complaint, the clerk of the court shall enter on the record an order * * *" *Held*, though the statute is mandatory and its provisions must be substantially complied with, it does not prescribe the manner of placing the order upon the record, but merely prescribes a place where a land owner may search for legal notice of the proposed foreclosure, and firmly attaching to a page of the chancery record a copy of the order, printed on a separate sheet, constitutes substantial compliance with the statute, and is sufficient to give the court jurisdiction of the cause. (Page 520.)

2. TAX SALE—OVERDUE TAXES—PUBLICATION—VALIDITY.—Where the chancery record shows that the order was printed and pasted in the record book, the contention that the order was published before being entered on the record, is not sustained where the record shows that the printed order on the record, was on paper printed on only one side. (Page 520.)

3. DESCENT AND DISTRIBUTION—RIGHT OF WIDOW WHEN DECEASED HUS-
BAND DIES WITHOUT OTHER HEIRS—BURDEN OF PROOF.—Under Kirby's
Digest, § 2642, giving the widow all of the property of her deceased
husband, when he died without relatives of any kind, the proof
need not show to a certainty that deceased left no other heirs, and
the testimony of the widow alone raises a *prima facie* case in her
own favor, throwing the burden of proof upon a stranger to show
that there were other heirs.   (Page 521.)

4. DESCENT AND DISTRIBUTION—RIGHT OF WIDOW IN ABSENCE OF HEIRS
OF DECEASED HUSBAND—PRESUMPTION.—Testimony of deceased's
widow that she knew of and heard nothing of any of his heirs,
raises a presumption that deceased left no other heirs.   (Page 522.)

Appeal from Lee Chancery Court; *Edward D. Rob-
ertson,* Chancellor; affirmed.

*Allen Hughes,* for appellants.

1.  The warning order was not entered of record.
74 Ind. 56; 52 Iowa, 171; 130 N. Y. 509; 23 Cyc. 835;
1 Black on Judgments, § 106; 93 Tex. 259; 131 Cal. 552;
34 Cyc. 585; 24 Am. & E. Enc. Law (2 ed.), p. 108; 30
Cal. 539.

2.  It was not entered of record before the publica-
tion.   55 Ark. 30; 47 *Id.* 131; 18 Wall. 372.

3.  Mrs. Comstock is not the heir.  The proof is
not sufficient to show there were no heirs nor lineal de-
scendants.  The burden was upon her.  Kirby's Dig.,
§ 2642; 90 N. C. 385; 48 S. C. 415; 6 Houst. (Del.) 447;
14 Ill. 218; 83 Ky. 219.

4.  The claim is stale.   93 Ark. 298.

*H. F. Roleson* and *Daggett & Daggett,* for appellees.

1.  The warning order was entered of record.  The
only object was notice.   55 Ark. 34.

2.  The contention that the warning order was pub-
lished before it was entered of record is not sustained
by the testimony.

3.  Mrs. Comstock is entitled to the possession and
makes a *prima facie* case of ownership.  Kirby's Dig.
§ 2745; 76 N. W. 922; 1 Wall. 371; 26 Fla. 461; 20 Col.
150; 17 Vt. 165; 81 Am. Dec. 108; 66 N. W. 1083; 35
Col. 129.

4. Mrs. Comstock is the heir. 48 S. C. 415; 14 Ill. 218; 9 Mo. App. 169; 1 Demblitz, Land Titles, 318; 5 Cow. 314; 25 Wend. 205.

5. There is no question of laches. 94 Ark. 122.

McCULLOCH, C. J. Appellees instituted an action at law against appellants in the circuit court of Lee County to recover a tract of land containing eighty acres in that county.

Appellants moved to transfer the cause to the chancery court, which motion was granted, and on final hearing a decree was entered in favor of appellees, from which an appeal has been prosecuted.

Appellees assert title to the land under a sale persuant to a decree of the chancery court of Lee County for overdue taxes. G. B. Comstock, the husband of Mrs. Mary Comstock, one of the appellees, became the purchaser of the land by an assignment of the certificate of purchase from two individuals to whom the land was struck off at the commissioner's sale. The records of the chancery court in that proceeding establish the fact that a deed was duly executed pursuant to the sale, but the deed has been lost. It is not contended that the evidence is insufficient to establish the fact that Comstock became the purchaser at the overdue tax sale. It is alleged that G. B. Comstock died without blood relations and that the lands descended to Mrs. Mary Comstock, his wife, under the statute which provides that "if there be no children, or their descendants, father, mother nor their descendants or any paternal or maternal kindred capable of inheriting, the whole shall go to the wife or husband of the intestate." Kirby's Digest, § 2642. She conveyed an undivided interest to her coappellee.

Appellants had at the time of the commencement of the action been in the actual possession of the land for a shorter time than the statutory period of limitation, but they defend on two grounds, namely, that the overdue tax decree and sale thereunder were void, and that the proof is not sufficient to establish the fact that Comstock left no heirs.

The ground of attack upon the overdue tax decree is that the clerk failed to enter the warning order on the record before he caused the same to be published in accordance with the requirement of the statute.

The statute provides that upon a complaint filed for the purpose of foreclosing the lien for overdue taxes "on the filing of such complaint the clerk of the court shall enter on the record an order, which may be in the following form."

The proof shows that the order was not transcribed on the record, but was printed on a separate paper and pasted on a page of the record so that a portion of it protruded from the bottom and was folded back within the record.

The contention is that this is not such an entry of record as the statute requires.

This court held in *Gregory* v. *Bartlett*, 55 Ark. 30, that in an overdue tax proceeding the court acquired no jurisdiction and the proceedings were void if the clerk failed to enter the warning order on the record as required by the statute. The court, speaking through Chief Justice COCKRILL, said:

"The statute does not authorize the clerk to make the order in any manner other than by entry on the record, and authorizes publication of nothing except a copy of the record. To say that the clerk can dispense with the record and make his entry in the first instance in a newspaper, would be to disregard a plain provision of the statute and dispense with one of the means the law affords for imparting information to the land owner. But when a statutory provision is plain, and is made to aid in accomplishment of a useful end, it can not be treated as merely directory, and so be disregarded." To the same effect see *Taylor* v. *Leonard,* 94 Ark. 122.

In *Pope* v. *Campbell,* 70 Ark. 207, the court held that the record referred to in the statute was the chancery record, and that entering the order upon the record of proceedings at law was insufficient and avoided the decree.

It is argued that the language of the statute requiring the clerk to "enter on the record an order" means to transcribe the order upon the record, and that printing it upon a separate paper and attaching same to a page of the record is not sufficient. Several cases are cited in the brief which tend to show that a literal interpretation of the words of the statute means that the order shall be written or printed upon the page of the record itself and not upon a separate paper attached to the record. But we do not think that a literal interpretation of the language of the statute is called for, though the statute is mandatory and its provisions must be substantially complied with. The purpose of this requirement was, as stated by Judge COCKRILL in *Gregory* v. *Bartlett, supra,* to afford information to the land owner, to prescribe a place where he may search to find information concerning foreclosures of liens for overdue taxes. The statute does prescribe the place where the order shall be entered, and as the court held in *Pope* v. *Campbell, supra,* that part of the statute is mandatory. But the statute does not prescribe in so many words the manner of placing the order upon the record, and there is no reason to believe that any requirement in that regard was in the minds of the law-makers. The statute does not undertake to deal with the question of the permanency of the record, but it merely prescribes a place where the land owner, before the court proceeds to an adjudication and the sale is made by the commissioner, may search for legal notice of the proposed foreclosure. The question of the manner in which the order shall be placed upon the record is a matter of form and not of substance, and this seems not to have been within the mandatory purpose of the framers of the statute. A statute may be mandatory in some respects without being so in others. Black on Interpretation of Laws, p. 336.

In *Leigh* v. *Trippe,* 91 Ark. 117, we held that the statute regulating tax sales provide that the clerk shall keep two separate records of lists of land sold to indi-

viduals and to the State, but that keeping those records in a single book was substantial compliance with the statute. In disposing of the question we said:

"There is no reason to believe that the provision for keeping the two lists separate was intended to be mandatory, and no reason to so treat it. That is merely a matter of detail, and the keeping of the lists separate affords no protection to the owner. If he searches the record at all for the sale of his land at a tax sale, he finds it in the list. He is chargeable with notice of the contents of that list, it affords all the information that would be obtained from a separate list, and he is not misled by the absence of, or failure to keep, such lists."

Applying that doctrine to the present case, we hold that, so far as the method of entering the order upon the record is concerned, only substantial compliance with the terms of the statute is required, and that firmly attaching to a page of the chancery record a copy of the order printed on a separate sheet constitutes substantial compliance and is sufficient to give the court jurisdiction of the cause.

It is also contended that the record shows that the printed sheet was pasted in the chancery record after the publication thereof in the newspaper. But we are of the opinion that that contention is not sustained by the appearance of the record. It is manifest, of course, that the order was put in type and printed on a separate sheet before it was pasted on the record, but it does not necessarily follow that the sheet was not pasted in the record until after the publication in the newspaper. It is printed on one side of the paper, which is evidently not a part of the newspaper in which it was published. The mere circumstance that the entry is printed upon a page is not, of itself, sufficient to establish the fact that it was placed there after the publication in the newspaper.

Our conclusion, therefore, is that the attack of appellants upon the validity of the overdue tax decree and the sale made thereunder is not sustained.

The remaining question is as to the right of Mrs.
Comstock to recover the whole of the property under
the statute of descents.

It is conceded that the proof is sufficient to establish
the death of G. B. Comstock; that he died without lineal
descendants, and that Mrs. Comstock is entitled to dower
in the lands; but it is insisted that the proof is insuffi-
cient to show that Comstock left no kindred of the blood
and that the whole estate descended to Mrs. Comstock.

The only testimony on this point is that of Mrs.
Comstock herself, which is very brief, and is as follows:

"G. B. Comstock was my husband. I was married
to him in 1886, and lived with him eight years. I do
not know whether he is dead or not. He left me in the
fall of 1894. He never said anything as he rode off. I
have not heard anything from him since and do not
know where he went, or what became of him, or whether
he is dead or alive. I do not know of any relatives he
had living at the time of his death, and I never heard of
his having any while I was his wife. I did not know
where he came from, nor anything concerning his per-
sonal or family history before I met him. When he left,
he did not say where he was going."

The burden of proof was upon appellees to estab-
lish the fact that Comstock left no other heirs. They
must recover, if at all, upon the strength of their own
title, and not upon the weakness of the title of their
adversaries.

But it does not follow that the proof must show to
a certainty that there were no other heirs. This can be
shown by circumstances and by reasonable inferences,
or the proof may establish a state of facts from which
the law will raise a presumption between the parties to
the litigation. In other words, we think that the evi-
dence, while very meager, was sufficient to make out a
*prima facie* case in favor of the widow, which then cast
upon a stranger the burden of showing that there were
other heirs. The widow here has shown that she knew
nothing of her husband's antecedents; that she had never

heard of him having any heirs, and it is inferable from her testimony that her husband never mentioned to her having any kindred, and up to the date her deposition was taken no other heirs had ever appeared as claimants to his property. Under those circumstances, there is not only some inference of fact, however slight it may be, that there are no other heirs, but the law ought to, and does, raise, as between the widow and a stranger, a presumption that there are no other heirs. It is sufficient to make a *prima facie* case in favor of the widow.

In an early New York case, where the inquiry was as to the right of the State to declare an escheat in its favor, one of the judges, delivering the opinion of the court, said:

"I am inclined to think that the proof was, *prima facie,* sufficient to show that Tool died without heirs. * * * He was never heard to speak of his family, father, mother, wife or children. What better evidence, then, does the nature of the case admit? Of whom are inquiries to be made? The place of his birth is not known. Most of the witnesses think he was an Irishman; but he never spoke of the place of his nativity; nor does there appear to be any clue by evidence of a higher or more satisfactory character. Very slight proof, I admit, on the part of the defendant, that the patentee had relatives or connections, would counterbalance this negative evidence. But in the absence of any such proof, I think the evidence on the part of the plaintiff may be considered, *prima facie,* sufficient." *People* v. *Etz,* 5 Cowan, 314.

The doctrine of this case is approved by Mr. Dembitz in his work on Land Titles (volume 1, page 318), where he cites the case among others, and makes the following statement of the law:

"When the commonwealth, or a purchaser from the commonwealth, seeks to recover lands escheated by failure of heirs, he or she had the burden of satisfying the jury that the decedent died without heirs, and proof

that a man's intimate acquaintance for several years never heard him speak of his family, parents, wife or children, is *prima facie* evidence that he had no heir if the place of birth is unknown, or.there is no clue to better evidence. It has even been held that, after advertisement and inquiry, nobody claimed the premises as heir or person last seized, this is enough to put the other side on their defense."

This seems to us to be the reasonable doctrine to apply in a case of this sort where there is a controversy between the widow, claiming an estate by descent, and a stranger to the title, and the proof is sufficient, we think, to make out a *prima facie* case in favor of appellees, which has not been overturned by any other testimony adduced.

Appellants' plea of laches need not be considered, as the appellees are not asking equitable relief but seek to recover on the strength of the legal title conveyed under the commissioner's deed.

Decree affirmed.

HART and SMITH, JJ., dissent.