[Civ. No. 4108. Second Appellate District, Division One.—May 2, 1923.]

## THE PEOPLE ex rel., Appellant, v. SAN BERNARDINO HIGH SCHOOL DISTRICT et al., Respondents.

[1] SCHOOLS AND SCHOOL DISTRICTS—ANNEXATION OF COMMON SCHOOL DISTRICTS TO HIGH SCHOOL DISTRICT—POWER OF SUPERVISORS.—Section 1734b of the Political Code, which provides for the annexation of common school districts to high school districts under certain circumstances and conditions therein specified and upon "recommendation" of the county superintendent of schools and of the supervisor in whose supervisorial district the school district to be annexed is located, is not unconstitutional on the ground that it places the power of annexation in the hands of officials having no legislative authority, but under said section the power of annexation is vested in the board of supervisors.

[2] ID.—"SHALL"—WHEN DIRECTORY.—The word "shall," as used in a statute such as 1734b of the Political Code, which requires that under certain circumstances and conditions and upon recommendation of the county superintendent of schools and the supervisor in whose supervisorial district the school district to be annexed is located the board of supervisors "shall" annex the common school district to the high school district, is directory and not mandatory; and under

that section the board of supervisors has the exclusive right to determine not only the preliminary question as to the desirability or the advisability of annexing a common school district to a high school district, but as well to ultimately enact the necessary legislative act to bring about that result.

[3] ID.—TAXATION—SPECIAL LEGISLATION—CONSTITUTIONALITY OF SECTION 1734b, POLITICAL CODE.—Section 1734b of the Political Code is not unconstitutional, as special legislation, because of the fact that a common school district annexed to a high school district is required to contribute to the high school fund in proportion to its taxable property, while the common school district not annexed is required to pay taxes in proportion to actual attendance of its children in the high school.

[4] ID.—CREATION OF CLASS—DISCRIMINATION.—The discrimination in the creation of a class among school districts, or in the manner of providing for the maintenance of the high school in either class, in order to fall within the inhibition of the constitution, must be arbitrary, not uniform in its operation, and not founded upon some natural or intrinsic or constitutional distinction.

[5] ID.—TAXATION WITHOUT REPRESENTATION—CONSTITUTIONALITY OF CODE SECTION.—Section 1734b of the Political Code is not subject to the objection that it subjects annexed districts to taxation and local government without representation.

[6] ID.—TAXATION OF ANNEXED DISTRICT FOR OUTSTANDING BONDS—VALIDITY OF STATUTE.—The contention that section 1734b of the Political Code is void for the reason that it subjects annexed common school districts to taxation for outstanding bonds of the high school district is untenable.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Henry Goodcell for Appellant.

W. J. Hartzell and Leonard, Surr & Hellyer for Respondents.

HOUSER, J.—This is an action in the nature of *quo warranto* brought for the purpose of annulling or declaring void an order made by the board of supervisors of San Bernardino County purporting to annex Highland School District to San Bernardino High School District upon proceedings had under section 1734b of the Political Code (as

added by Stats. 1921, p. 722, sec. 1). A general demurrer to the complaint was sustained without leave to amend, and judgment was thereupon entered that "the plaintiffs take nothing by their said action." The appeal is from the judgment.

San Bernardino High School District, before the order made by the board of supervisors herein referred to, was identical with the territory included within San Bernardino School District, and said districts were governed in common by a board of education elected by the electors residing within the San Bernardino High School District. Highland School District is a school district situate within ten miles of San Bernardino High School District. Highland School District has never maintained a high school, nor formed part of or been annexed to any high school district, except in so far as it may have been annexed to said San Bernardino High School District by the order to which reference has heretofore been made. On August 31, 1921, the board of supervisors of San Bernardino County adopted an order for the annexation of said Highland School District, together with ten other such districts, to said San Bernardino High School District. Said order was made under and by virtue of section 1734b of the Political Code, and was so made pursuant to recommendation of the county superintendent of schools of said San Bernardino County and of the supervisor of said county in whose district said high school was situated, after publication of notice as prescribed by said section, and was so made without any authorization or procedure and without any consent by or on the part of said Highland School District or any of the officers, residents or taxpayers thereof. At the time said order was made said San Bernardino High School District was indebted in the sum of two hundred thousand dollars on account of bonds theretofore issued and still outstanding, which bonds become due and payable in installments extending over several years hereafter.

It is contended that section 1734b of the Political Code is unconstitutional in the following respects:

1. That it places the power of annexation in the hands of officials having no legislative authority.

2. That it is special legislation in that it provides for annexation only to high school districts that are governed by an appointive school board.

3. That it subjects annexed districts to taxation and local government without representation.

4. That it subjects annexed districts to taxation for outstanding bonds of the high school district.

Section 1734b of the Political Code provides, in part: "Not later than August 31st, one thousand nine hundred and twenty-one, the board of supervisors of each county or city and county in which there are one or more high school districts, and in which there are one or more common school districts not members of any high school district at the time of the passage of this act, shall, upon recommendation of the county superintendent of schools, annex each of such common school districts to that high school district whose high school is most easily accessible to the children of the particular common school district; provided, that no common school district shall be annexed to such high school districts without the recommendation of the county superintendent of schools, and the supervisor or supervisors in whose district or districts said common school districts may be located; and provided, further, that no common school district shall be annexed unless the nearest point of such common school district lies within ten miles of a high school district."

[1] It is contended that because section 1734b of the Political Code provides that, upon the recommendation of the county superintendent of schools and the supervisor in whose supervisorial district the district to be annexed is located, the board of supervisors shall annex such school district to the high school district, the statute is unconstitutional in that it places the power of annexation in the hands of officials having no legislative authority. It may be conceded that neither a county superintendent of schools nor a single supervisor in his individual capacity, acting outside a board meeting, nor both of them combined, has any legislative authority. Among the definitions found in Funk and Wagnalls New Standard Dictionary for the word "recommend" are the following: "Offer with favorable representations; praise as desirable, advantageous, trustworthy, or advisable; speak in behalf of; counsel as to a course of action." Taking the word "recommendation" in this instance to carry any one of the foregoing meanings, its significance is a mere suggestion as to the desirability of a certain course of action to be pursued by the board

of supervisors.  However, the statute contains the provision that upon such ''suggestion'' being made, the board *shall* ''annex each of such common school districts to that high school district whose high school is most easily accessible to the children of the particular common school district.'' The power of legislation is not placed in the hands of officials having no legislative authority—only the power of making a recommendation.  The actual legislation upon that matter is still left with the board of supervisors—the legislative body of the county having power and authority to legislate therein.  The effect of the statute as to the ''recommendation'' and as to the action to be taken thereon by the board of supervisors is no more than though the statute, instead of providing for a recommendation by the county superintendent of schools, had prescribed that whenever from any source it should appear ''advisable,'' or ''desirable,'' or ''advantageous'' to the board of supervisors that any common school district should be annexed to a high school district, the board of supervisors should make the necessary order or resolution to that effect.  It is well settled that a statute may be so drawn that upon the happening of some prescribed contingency it shall become operative; or that it may remain in force until abrogated for like reason.  In the case of *People* v. *Dunn*, 80 Cal. 211 [13 Am. St. Rep. 118, 22 Pac. 140], it is held that an act of the legislature giving to certain persons the authority to select a site for a public building and providing further that no purchase of such site should be made without the approval of the Governor of the state, thus leaving it partly, at least, to the Governor whether or not the act should take effect, was not a delegation of legislative functions.

Mr. Justice Harlan, in the case of *Field* v. *Clark*, 143 U. S. 649 [36 L. Ed. 294, 12 Sup. Ct. Rep. 495, see, also, Rose's U. S. Notes], after an exhaustive review of the authorities and early precedents in connection with that provision of the Tariff Act of 1890, which, among other things, gives the President of the United States the power to suspend operation of certain clauses in the Tariff Act ''when he may deem proper,'' held that the legislation was purely contingent; that it provided for the ascertainment of an event in the future which was defined by the act and directed to be evidenced by presidential proclamation, and that it pre-

scribed the consequences which were to follow upon that proclamation. He reaches the conclusion that "such proclamation was wholly in the. nature of an executive act, a prescribed mode of ascertainment, which involved no exercise by the President of what belonged to the law-making power." ＼

*Hobart* v. *Board of Supervisors of Butte Co.,* 17 Cal. 23, is also a well-considered case having a general bearing upon the subject and is authority for the broad statement of law that "an act granting power to be exercised upon such condition as the legislature may impose is no delegation of legislative authority, nor is it invalid."

[2] Considering a "recommendation" as carrying the meaning only ·of a suggestion as to the desirability of a certain action, the apparently mandatory "shall" fades into nothing more than a term of .direction. There is ample authority for holding "shall" to be directory rather than mandatory, especially in a matter, as here, which relates to the performance of a public duty. It is no part of the duty of either or both of the officials mentioned in the statute to legislate upon any matter. On the other hand, it is most emphatically the duty of the · board of supervisors, as a board, to perform legislative functions, and the presumption is that the legislative department of the county government would have an exclusive right to determine not only the preliminary question as to the desirability or the advisability of annexing a common school district to a high school district, but as well to ultimately enact the necessary legislative act to bring about that result.

"Shall" or "must" are frequently construed as directory terms. Whenever the text of a statute and the intent of the legislature as a body, as gathered either from the particular statute under consideration, or from it in connection with other related statutes, show that the real meaning of the legislature was that apparently mandatory words shall be given a directory meaning, they will be given such a construction. Whatever is within the ascertained intention of the legislature is just as much a part of the statute as are the written words herein contained, and if the intent conflict with the literal meaning, especially · where the rights of the public are involved, words of command may be construed as permissive, or as carrying discretionary

powers. (*People* v. *Sanitary District of Chicago,* 184 Ill. 597 [56 N. E. 953]; *Clancy* v. *McElroy,* 30 Wash. 567 [70 Pac. 1095]; *First National Bank of Seneca* v. *Lyman,* 59 Kan. 410 [53 Pac. 125]; *Cooke* v. *Spears,* 2 Cal. 409; *Estate of Chadbourne,* 15 Cal. App. 366 [114 Pac. 1012].) The case of *Board of Education of the City of Sacramento* v. *Board of Trustees of the City of Sacramento,* 96 Cal., at page 42 [30 Pac. 838], is illustrative. The statute there in question, among other things, provided in substance that it was the duty of the board of education to submit to the board of trustees an estimate of the amount of money that would be required for school purposes during the current year, and that upon receipt of same the board of trustees "shall" levy a direct school tax, etc. In holding that the word "shall" was merely directory, the court said: "The general rule in the construction of statutes relating to the performance of a public duty which does not affect any private rights or interests but concerns the public alone, is that the language of the statute, though imperative in terms, must be regarded as directory rather than mandatory." A similar question was raised on nearly identical facts in the case of *Board of Education of the City of Woodland* v. *Board of Trustees, etc.,* 129 Cal. 599 [62 Pac. 173], and the court affirmed the decision in the Sacramento case, especially with reference to the effect of the provisions of the statute, closing with the remark that "the language used must therefore be held, as in the Sacramento case, to be directory only." In a case involving a section of the Political Code which at the time provided in substance that on the neglect of persons who excavate ditches across public highways to bridge such ditches, "the road overseer for that road district *shall* construct the same," the court, taking other statutes into consideration, ruled that the word "shall" should be construed as "may."

The statute, in addition to prescribing the manner in which the desirability of annexing a common school district to a high school district shall be brought to the attention of the board of supervisors, also vests a discretionary power in the board as to the high school district to which the common school district shall be annexed, dependent upon the accessibility of the latter to the former; and providing further that a notice shall be given by the board of a hearing on

the matter, with the ultimate right of determination therein resting in the electors residing within the confines of the school district proposed to be annexed. No legislative power is attempted to be conferred upon the county superintendent of schools or upon the individual supervisor—only the right to make a recommendation, which recommendation suggests to the board of supervisors the propriety of, or the advantages which may accrue from, enacting legislation having the effect of annexing a given common school district to an undesignated high school district, as the board of supervisors in its discretion, or the electorate of the common school district may determine. Such provisions in the statute are indicative of the intent of the legislature with respect particularly to the effect of the word "shall"; that is to say, whether that word should be construed as mandatory or merely directory, in connection with the duties of the board of supervisors upon the receipt by the board of the "recommendation" by the county superintendent of schools. It therefore becomes apparent that the intent of the legislature was, upon the recommendation of certain designated officials, to enact such legislation as would give the board of supervisors the authority, to be exercised at its discretion, to do the things enumerated in the enabling statute.

[3] Appellant contends that the statute in question "is special legislation in that it provides for annexation only to high school districts that are governed by an appointive school board." As a matter of fact, the statute contains no provision with reference to the annexation of a common school district to a high school district having an appointive school board. The statute, after providing generally for annexation of common school districts to high school districts, further provides "that where the high school district which is most accessible to a majority of the pupils of the common school district attending high school is governed by an appointive school board, that the board of supervisors instead of annexing said common school district to the high school district having an appointive school board, shall cause to be levied upon the property of such elementary school district a tax which shall produce an amount computed as follows: From the entire cost of maintenance of the high school for the year plus the interest and payments on bonds

of said high school district for the year, there shall be subtracted the entire income of such high school from state and county sources; the remainder shall be divided by the units of average daily attendance in said high school, and the quotient so obtained shall be multiplied by the units of average daily attendance of pupils from the aforesaid elementary school district. Said amount shall be levied and collected from such elementary school district in the usual way and shall be paid into the special fund of the high school district.''

It is urged that there is no reason why annexation should be required in one case and prohibited in the other, or why an annexed high school district should be required to contribute to the high school fund in proportion to its taxable property, while the common school district not annexed should pay taxes in proportion to actual attendance of its children in the high school. The fact that one class of school districts is dealt with by the law in a manner different from that in which another class is treated is in itself no sufficient reason for declaring the law to be special legislation and hence inimical to the constitutional provision. [4] The discrimination in the creation of a class among school districts, or in the manner of providing for the maintenance of the high school in either class, in order to fall within the inhibition of the constitution, must be arbitrary, not uniform in its operation, and not founded upon some natural or intrinsic or constitutional distinction. (*City of Pasadena* v. *Stimson*, 91 Cal. 251 [27 Pac. 604]; *Darcy* v. *Mayor of San Jose*, 104 Cal. 642 [38 Pac. 500]; *Rode* v. *Siebe*, 119 Cal. 521 [39 L. R. A. 342, 51 Pac. 869]; *Deyoe* v. *Superior Court*, 140 Cal. 481 [98 Am. St. Rep. 73, 74 Pac. 28]; *Ex parte King*, 157 Cal. 164 [106 Pac. 578].) In the Deyoe case it is said that ''the classification must not be arbitrary for the mere purpose of classification, but must be founded upon some natural or intrinsic or constitutional distinction which will suggest a reason which might rationally be held to justify the diversity in the legislation.''

The classification here as to annexation is not whimsical, but it is most natural, and the statute has a uniform application. By rules of law not here under consideration it is provided that some school districts be governed by an appointive board of trustees, while other such boards shall be

elected to office. In the matter of taxation some common school districts may have few children who may attend high school; other common school districts may have many. It is proper that the several districts pay taxes according to the benefits received. The statute in question merely recognizes existing conditions and provides for the maintenance of each class of school districts by an appropriate method of taxation.

[5] Appellant's third point with reference to the unconstitutionality of section 1734b in that "it subjects annexed districts to taxation and local government without representation" is completely answered by the case of *Board of Education of the City of San Rafael* v. *Davidson*, 190 Cal. 162 [210 Pac. 961]. The facts of that case are nearly identical with the facts herein. A matter involving the particular point was squarely before the court and the ruling was directly opposed to appellant's contention. Among other things, the court said: "We conclude, therefore, that under the state school law as followed by the charter of San Rafael it is contemplated that outlying and adjacent elementary school districts may be annexed to a city high school district for high school purposes and that the district so consolidated is to be under the government and control of the city board of education and the annexed territory becomes a part of the city for the purpose of electing such board."

[6] As a final contention on the part of appellant it is urged that section 1734b is void for the reason that it subjects annexed districts to taxation for outstanding bonds of the high school district.

Section 18 of article XI of the California constitution provides, among other things, in substance, that no board of education or school district shall incur any indebtedness or liability exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the qualified electors thereof voting at an election held for that purpose. Section 1734b contains no provision directly affecting the question of the payment by annexed common school districts of either the principal or the interest on any outstanding bonds on the high school district to which such common school district may be annexed. But as to the common school districts which are not annexed but which are most accessible to a given high school district which is

governed by an appointive board of trustees, the section provides that the board of supervisors, instead of annexing the common school district to the high school district, "shall cause to be levied upon the property of such elementary school district a tax . . . computed as follows: From the entire cost of maintenance of the high school for the year, plus the interest and payments on bonds of said high school district for the year, there shall be subtracted," etc. "Said amount shall be levied and collected from such elementary school district in the usual way and shall be paid into the special fund of the high school district." Section 1747 of the Political Code provides that "the board of supervisors of the county whose superintendent of schools has jurisdiction over any high school district must annually, . . . levy a tax for that year . . . for the interest and redemption of all outstanding bonds of such district."

In view of the fact that at the time of the annexation of the common school district to the high school district here in question the high school district had outstanding bonds in the sum of two hundred thousand dollars, it is claimed that if the annexed common school district should incur any liability for payment of any part of the existing bonded indebtedness of the high school district to which the common school district was annexed, the common school district would thereby incur at the time of such annexation a future liability exceeding its income provided for the current year without an election for that purpose, which liability is forbidden to be incurred by the section of the California constitution to which reference has been made. It is argued by appellant that because section 1734b contains no direct provision with reference to property lying within an annexed common school district being taxable on account of the bonded indebtedness of the high school district to which such common school district is annexed and because said section does provide for such taxation on that account where no annexation takes place, and because section 1734a of the Political Code (as added by Stats. 1919, p. 396, sec. 1), which has to do with annexation of common school districts to high school districts under certain prescribed conditions, especially exempt from taxation on account of the payment of bonded indebtedness the property lying within a common school district annexed as in section 1734a provided—it necessarily follows that the provision of section 1747 of the

Political Code applies, which requires a tax to be levied upon all the taxable property in the high school district for the payment of the interest and redemption of all outstanding bonds of the high school district to which the common school district has been annexed; and it is also contended that under section 1747 of the Political Code the property of the high school district includes not only the property which lay within it at the time the bonds were issued, but as well all other territory which was added thereto by reason of the annexation of any and all common school districts.

Assuming, without deciding, that section 1747 of the Political Code applies, and, consequently, that under that section it became the duty of the board of supervisors to levy a tax on all the property in the high school district, including the property in the annexed common school district, to pay "interest and redemption" on all outstanding bonds of the high school district, it does not follow that section 1734b is unconstitutional. That section embraces a plan for annexing a common school district to a high school district, but no provision with reference to the levying of a tax in circumstances such as are here presented. Even though the section under attack were to contain a provision similar to the clause of section 1747 with reference to taxation, the rule of law is that if such provision be severable from the other provisions of the statute, so that the objectionable part being eliminated the remainder of the statute is capable of being carried into effect, and it is clear that the legislature intended to enact such remainder irrespective of the part of the statute claimed to be void, that part of the statute which is free from fault will stand and be considered as though the unconstitutional part were omitted. (Cooley on Constitutional Limitations, 7th ed., p. 246; *Hale* v. *McGettigan,* 114 Cal. 112 [45 Pac. 1049]; *People* v. *McFadden,* 81 Cal. 500 [15 Am. St. Rep. 66, 22 Pac. 851]; *Federal Construction Co.* v. *Wold,* 30 Cal. App. 360 [158 Pac. 340].) The provisions of section 1747, at least so far as the clause here considered is concerned, have been a part of our law since as far back as 1909, while section 1734b was enacted in 1921. While one of these statutes may in a measure supplement the other, they are nevertheless entirely independent statutes and neither of them is essential to the existence of the other. They are perfectly distinct and separable and each of them contains just and useful provisions

standing alone which are perhaps in nowise obnoxious to any constitutional objection.

There is another reason why section 1734b, even when construed as a part of section 1747, is not in conflict with the provisions of the California constitution which forbids a board of education or a common school district from incurring an indebtedness or liability greater than its current income for any one year without the assent of two-thirds of its qualified electors as expressed at an election held for that purpose. In order that one may "incur" a debt or a liability one must necessarily perform some act or take some action—in other words, one must do something that will have the effect of bringing upon oneself the debt or liability. In the instant case it cannot be said that the Highland School District did anything by which any indebtedness or liability was incurred against it. If any debt or liability was created as against the Highland School District, it was one which was not of its own choosing or making, but was thrust upon it primarily by the board of supervisors of San Bernardino County, and secondarily by operation of law. The cases are numerous which announce the principle that in such circumstances there is no infraction of the constitutional provision to which reference has been made. In the case of *Lewis* v. *Widber,* 99 Cal. 412 [33 Pac. 1128], which involved a consideration of the constitutional provision here in question, the court said: "It is quite apparent, however, that this clause of the constitution (section 18 of article XI) refers only to an indebtedness or liability which one of the municipal bodies mentioned has itself incurred—that is, an indebtedness which the municipality has contracted, or a liability resulting, in whole or in part, from some act or conduct of such municipality. Such is the plain meaning of the language used. The clear intent expressed in the said clause was to limit and restrict the power of the municipality as to any indebtedness or liability which it has discretion to incur or not to incur." In *Long Beach* v. *Lisenby,* 180 Cal. 56 [179 Pac. 198], the foregoing language is quoted with approval, and in *McCracken* v. *San Francisco,* 16 Cal. 632, where a similar provision of a section of the city charter of the city of San Francisco was under consideration, the court said: "We are clear that the provision refers only to acts or contracts

of the city and not to liabilities which the law may cast upon her." In 28 Cyc., at page 1541, where many cases are cited as establishing the principle, it is said: "Limitations on municipal indebtedness do not apply to such liabilities as are cast by law upon the corporation, but only to those created by voluntary act or contracts." The following California cases also support the principle: *Welch* v. *Strother*, 74 Cal. 416 [16 Pac. 22]; *Federal Construction Co.* v. *Wold*, 30 Cal. App. 360 [158 Pac. 340]; *Harrison* v. *Horton*, 5 Cal. App. 419 [90 Pac. 716]; *Metropolitan Life Ins. Co.* v. *Deasy*, 41 Cal. App. 674 [183 Pac. 243].

The case of *People* v. *Hanford Union High School District*, 148 Cal. 705 [84 Pac. 193], was one in which the board of trustees of a common school district in agreeing that the common school district be annexed to a high school district, as a part of the "terms" of annexation, attempted to bind the common school district by an agreement with the trustees of the high school district to pay "its *pro rata* of the taxes for the liquidation of interest and bonded indebtedness of said Hanford Union High School District." No election was held for the purpose of procuring the assent of two-thirds of the electors of the common school district. It was held that the order of annexation made by the board of supervisors was ineffectual for any purpose; but that decision is not "out of line" with the other decisions of this state for the reason that it appears the incurred indebtedness or liability on the part of the common school district was the result of an agreement between the two boards of trusteees, and was not such a debt or a liability as was cast by law upon the school district.

It is the conclusion of this court that section 1734b of the Political Code is not subject to appellant's specified objections thereto. It follows that the judgment should be affirmed, and it is so ordered.

Conrey, P. J., concurred.

Curtis, J., being disqualified, did not participate in the foregoing opinion.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 29, 1923,