

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## ·AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable C. O. Murdoch
County Attorney
Menard County
Menard, Texas

Dear Sir:

Opinion No. O-3915
Re: Is a deputy sheriff qualified
to serve as chairman of the
Democratic Party for a county?

We have given consideration to your opinion request
of recent date, from which we quote the following:

"The question has been raised by the
Sheriff and his deputy:

"Is a deputy sheriff qualified to serve
as Chairman of the Democratic Party for a
county?

"Under Article # 2940 of the Civil Stat-
utes of Texas, which reads in part:

"'. . . . nor shall any one act as chairman
or as member of any District, County or City
Executive Committee of a political party who
has not paid his poll tax, or who is a candi-
date for office, or who holds any office of
profit or trust under either the United States
or this State, or in any city or town in this
State). . . .'

"I am of the opinion that a deputy sheriff
cannot serve as Chairman of the Executive Com-
mittee of a county; however, it is my understand-
ing that if one were to do so, if there were no
irregularities, or fraud, in the holding of
elections, the elections would be valid.

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"Chestnut vs. Wells, 278 S. W. 465;
        280 S. W. 351;
Gayle vs. Alexander, 75 S. W. (2d) 706;
Savage vs. Umphries, 118 S. W. 893."

It will be observed that the pertinent words of the statute you cite (Article 2940, R. C. S.), and which we emphasize, are as follows:

"* * * nor shall anyone act as chairman * * * of any * * * County * * * Executive Committee of a political party * * * who holds any office of profit or trust under * * * this State, * * *."

The primary factor to be determined in answering your question as stated, is whether the plain tenor of the above specially quoted and emphasized words of the statute are to be considered as mandatory or directory. In the case of Gayle vs. Alexander, (Tex. Civ. App.) 75 S. W. (2d) 706, at p. 708, the distinction between the two terms as applied to Article 2940 is stated thusly:

"* * *. A mandatory provision in a statute is one, the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one, the observance of which is not necessary to the validity of the proceeding. A statute may be mandatory in some respects and directory in others. 59 C. J., p. 1072, 6 630; Carrier v. Comstock, 108 Ark. 515, 159 S. W. 1097, par. 2; Hocking Power Co. v. Harrison, 20 Ohio App. 135, 153 N. E. 155, 156, par. 1; Deibert v. Rhodes, 291 Pa. 550, 140 A. 515, 516, 517, pars. 2, 3, and 4. There is no universal rule or absolute test by which directory provisions in a statute may in all circumstances be distinguished from those which are mandatory, but in the determination of this question, as every other question of statutory construction, the prime object is to ascertain the legislative intent from a consideration of the entire statute, its nature, its object, and the consequences that would result from construing it one way or the other. Words of permissive character may

be given a mandatory significance to effect the legislative intent. On the other hand, the language of a statute, however mandatory in form, may be deemed directory whenever the legislative purpose can best be carried out by such construction. 59 C. J., pp. 1072, 1073, § 631; Burton v. McGuire (Tex. Civ. App.) 3 S.W. (2d) 576, 583, par. 15; Kansas City, M. & O. R. Co. v. Rochester Independent School Dist. (Tex. Civ. App.) 292 S. W. 964, 965, par. 1; Valley Bank v. Malcolm, 23 Ariz. 395, 204 P. 207, 211, par. 4; People ex rel. Thompson v. San Bernardino High School Dist., 62 Cal. App. 67, 216 P. 959, pars. 3 and 4. The legislative intent in enacting the article under consideration was evidently to restrict the selection of election officers to those who were free from the supposed influence, embarrassment, or interest arising from office holding or personal candidacy, or from the apparent indifference to the duties of citizenship which might be inferred from a failure to pay a poll tax. So far as the selection of election officers is concerned, said article might well be deemed mandatory and compliance therewith required when the eligibility of an officer so selected is denied, or his right to serve as such assailed by any proper proceeding prior to his actual service. Browning v. Gray, 137 Tenn. 70, 191 S. W. 525. No such situation is presented in this case. But should the provisions of said article in that phase of its application be held mandatory, it does not necessarily follow that when a person named in said article has been selected as an election officer for a particular voting precinct, and his selection has not been assailed but has been acquiesced in by the qualified electors of such precinct by participating in the election held therein, and the votes cast in such precinct have been fairly and correctly counted and tabulated and return thereof duly made, that such election as to said precinct should, solely by reason of the participation of such election officer in holding the same,

be declared void, the returns thereof excluded
from the canvass of the votes cast in said
election in the entire county, and the voters
of such precinct thereby in effect disfranchised."
(Emphasis ours).

In the above case, Gayle and Alexander were opposing
candidates for the office of assessor and collector of taxes
of McLennan County. After the election, the canvass of returns
showed Alexander the winner, and Gayle sought to have the elec-
tion in some boxes of the county declared a nullity on the
ground that certain precinct election officials were disquali-
fied to act. Of the challenged precinct officers of election,
the trial court found that four were school trustees at the
time of the election; that one man held a "purported appoint-
ment" as deputy sheriff, but had never taken the oath nor re-
ceived compensation as such officer; and that three had been
acting as deputy tax assessors for Alexander, the appellee,
from January to May of the year of the election, which was held
in July.

The court further found that the election was fairly
and honestly held; that the selection of the above mentioned
election officers was not fraudulently brought about; that their
service did not cast suspicion or doubt upon the result of the
election; and that the voters participating in the election should
not be disfranchised because of such service.

In addition to the above quoted dissertation upon "man-
datory" and "directory" provisions of the statute, the Waco Court
of Civil Appeals, in affirming the trial court, also relied upon
the principle stated in the earlier case of Savage vs. Umphries,
(Tex. Civ. App.) 118 S. W. 893, wherein the local option election
under consideration was upheld despite the fact that a city alder-
man acted as an election judge, because another of the judges was
not disqualified. Pointing out that in the pending case there
were in each voting precinct, in addition to the challenged of-
ficial other judges and clerks participating therein, the Savage
vs. Umphries rule was approved by the Waco Court in the Gayle vs.
Alexander case, supra.

Upon the question before us, we think it appropriate,
especially in view of your citation of the case, to quote from
Savage v. Umphries (118 S. W. 893, at p. 901):

"The general rule is that statutory provisions regulating the conducting of public elections, if not made mandatory by the express terms of the law, will be construed as so far directory that the election will not be nullified by mere irregularities, not fraudulently brought about, when the departure from the prescribed method was not so great as to throw a substantial doubt on the result, and where it is not shown that there was any obstacle to a fair and free expression of the will of the electors. Black on Interpretation of Laws, p. 353. It is said that: 'There is nothing better settled than that the acts of election officers de facto, who are in under color of election or appointment, are as valid, as to third parties and the public, as those of officers de jure. The doctrine that electors may be disfranchised because one or more of the judges or inspectors of election did not possess all the qualifications required by law finds no support in the decisions of any judicial tribune.' 15 Cyc. 311. But here, if the allegations in appellants' trial amendment be true, Shaughnessy was absolutely prohibited by the statute from acting as judge of the election. This inhibition did not go to his ineligibility or disqualification, but is an absolute denial of his right to act at all as judge in the election, and, in view of the statute, he could no more have acted as an officer de facto than he could de jure, for the law absolutely prohibits him from acting at all in any capacity. But it does not follow from this that, because he, in violation of the law, acted as a judge of the election, it should be declared null and void as to that precinct. It seems to us that the question as to the validity or invalidity of the election should be determined as though he had not acted at all, in the absence of any allegation that he did anything that would tend to change the result. In this view the election in that precinct should be regarded as having been presided over by only one judge, for the county commissioners' court was required in voting

precincts, where there were less than 100 voters who had paid their poll tax and received their certificates of exemption, to appoint two reputable men, who were qualified voters, as judges of the election, and it will be presumed that it performed this duty. We are not prepared, therefore, to hold that, because one of the parties appointed as judge was prohibited by the law from acting as such, would vitiate, so as to render null, the election as to such precinct, presided over by the other judge, who, in the absence of an allegation to the contrary, must be presumed as competent to act; for to so hold would be to disfranchise all the qualified electors who voted at said precinct, without it appearing that the election was in any way affected by being presided over by one judge, instead of two as required by the statute. We therefore overrule the assignment." (Emphasis ours.)

Your reference to the case of Chestnut vs. Wells was noted; we find two distinct cases on the cited pages of the South Western Reporter. The first is Chestnut vs. Wells, (Tex. Civ. App.) 278 S. W. 465, the second is Chestnutt vs. Wells, (Tex. Civ. App.) 280 S. W. 351. Although the same parties appear litigant, the numbers of the cases are different and they appear to be separate suits. In any event, the Court of Civil Appeals in each case points out that the elections held were "special" ones and that the provisions of what is now codified as Article 2940, Revised Civil Statutes, being a part of the Terrell Election Law, did not apply. We believe a further study of the cases will convince you of their inapplicability here. See, also on "special" elections, the cases of Walker vs. Mobley, (Tex. Civ. App.) 105 S. W. 61; Ibid, (Sup. Ct., answering certified questions) 103 S. W. 490; Ex parte Anderson, (Tex. Cr. App.) 102 S. W. 727; Hill vs. Smithville Independent School District, (Tex. Civ. App.) 239 S. W. 987, p. 991; Miller vs. Tucker, (Tex. Civ. App.) 119 S. W. (2d) 92.

In the case of Huff vs. Duffield, (Tex. Civ. App.) 251 S. W. 298, there was a contest of an election held to fill the office of county and district clerk of Willacy County at the general election. The votes of fifteen (15) persons were objected to because the presiding officer at the box where the

538

persons voted was also acting as postmaster, and he alone wrote his name on the back of each of the ballots. Holding that the votes were properly allowed the court stressed the point that the presiding judge was not the postmaster "but merely taking care of the office until other arrangements were made."

The most recent case we have found is that of Nesbitt vs. Coburn, (Tex. Civ. App.) 143 S. W. (2d) 209. Opposing candidates for the Democratic nomination for County Commissioner became parties to a contest following the second primary of 1940. The facts and contentions on the point sufficiently appear in the following quotation from the opinion:

> "Appellant contends that all of the votes cast at the Donie voting box, where appellee received a vast majority thereof, should have been held illegal and not counted because the party who acted as the presiding judge of said voting box had not been properly appointed the presiding judge thereof. It does not appear that such party had been expressly selected by the Democratic Executive Committee of the county to hold the election on the occasion in question. However, it does appear that he was the Democratic committeeman from that precinct and that it had been the custom for years for each precinct chairman of said county to serve as the presiding judge of the election in his precinct. The rule seems to be that the statutes with reference to the manner of appointing election officers are directory and that irregularities therein will not affect the validity of the election. In such cases where there is no protest on the part of the voters, they will be held to have ratified the illegal appointment or unauthorized assumption of authority of the party who serves as such election judge. Hill v. Smithville Ind. School Dist., Tex. Civ. App., 239 S. W. 987; Deaver v. State, 27 Tex. Civ. App. 453, 66 S.W. 256. It does not appear that there was any protest on the part of the voters with reference to the presiding judge in the voting box in question. We therefore hold that the court did not err

in refusing to hold as illegal the votes
counted at said Donie voting box."

From the above authorities and others examined by us,
we think it extremely doubtful that the same result would be
attained where a county chairman's eligibility should be chal-
lenged.  In every case examined by us (and after extensive
search we have not found one involving a county chairman), the
courts have said upon contests being brought _after_ the election,
that the burden rests upon contestants to show that the _results_
of the election were affected or changed by the irregularity or
departure from the statute.  We can conceive that such a rule
would be considered safe and sound insofar as applicable to
election judges or clerks whose duties are largely ministerial
and whose work can be checked by other persons whose eligibility
would not be in question, whereas a different conclusion might
well be reached in the case of a county chairman, the nature of
whose duties as fixed by law necessarily involve many acts of
official discretion, as well as other acts of ministerial func-
tioning.  We deem it unnecessary to attempt to list here all of
these, but suffice it to point out that he is the presiding of-
ficer over all meetings of the county committee; he is furnished
in advance of elections the lists of qualified voters; he is the
recipient of the returns of election and custodian of every one
of the ballots cast at the election; he declares the result, and
certifies same to other proper officials; he presides over all
county conventions; he is by virtue of his office an ex-officio
member of all district executive committees of his party; he
collects and disburses the expense money needed to conduct the
primaries; he appoints the precinct presiding judges with the
approval of the executive committee; in general elections he may
appoint supervisors -- in short, he is one of the most important
cogs in the machinery of our election system.  With just a little
"slip" here and an "inadvertence" there, he can, unless of un-
questionable integrity and conscientious devotion to the high
trust imposed upon him, in many and various ways disrupt the
orderly and honest procedure contemplated by the lawmakers to
insure the purity of the ballot -- the strongest corner stone
in our structure of a free government.

A deputy sheriff certainly holds an "office of profit
or trust" under the laws of this State.  He is so recognized by
both the statutory and the case law of Texas.  He is appointed
by the sheriff, to "continue in office" during the pleasure of
his principal; he has power and authority to perform all the
acts and duties of the sheriff himself; he must take the official

oath. See Revised Civil Statutes, Articles 6869, 6870, 3884, 3891, 3902, 7102; Code of Criminal Procedure, Articles 36, 44; Miller vs. Alexander, 13 Tex. 497, 506; Towne vs. Harris, 13 Tex. 507, 512; State vs. Brooks, 42 Tex. 62; Murray vs. State, 6 S. W. (2d) 274; 34 Tex. Jur. 601.

It seems so self-evident as to be trite to say that a deputy sheriff has a vital and personal interest in the outcome of every election affecting his principal. His name may as well be on the ballot, for with the defeat of his sheriff he ceases to be such officer, losing not only his title and office but his emoluments as well.

We agree with your conclusion that a deputy sheriff is not qualified to serve as a county chairman of the Democratic party.

We further believe that under the authorities herein discussed, he could unquestionably be ousted from serving or attempting to serve in such capacity. Upon the proposition you assert that if one were to do so, the elections would be valid, absent proof of irregularities or fraud, we express no opinion at this time due to the utter lack of any such case having appeared as coming before any appellate court of this State. It is difficult for us to conceive of the electorate permitting the question to reach that stage, or for the officer in question, whoever he may be, to insist upon it.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Benjamin Woodall
Assistant

BW:RS